George Starke, J.
Companion motions No. 100 and No. 149 of the calendar of May 30, 1975, are consolidated for disposition as follows:
In motion No. 100, the Attorney-General seeks to amend and modify a provision of the show cause order of May 7, 1975 herein, to direct that the bank account of Natures Eve, Inc. with $209,000 on deposit be frozen pending determination of motion No. 149, wherein the Attorney-General seeks to punish defendants for civil contempt. Defendant (without actually designating the papers submitted as such) apparently cross-moves to vacate the order of May 7, 1975.
The Attorney-General brought the underlying action for consumer fraud alleging defendants’ violation of article 22-A *260 of the General Business Law. A consent judgment was entered on December 12, 1974.
In the primary motion (No. 149) presently before the court, the Attorney-General alleges defendants’ willful breach of this judgment and seeks substantial fines and restitution.
Briefly, defendants’ business operations consisted of selling Ernie Tucker’s money making plan to consumers in booklet form for a $10 fee. Defendant’s plan offered to purchasers, envelopes, advertising insertions for merchandise and mailing lists all for an additional fee. The purchasers at their own expense were to solicit mail order sales for the merchandise and keep 50% of the moneys for sales, sending the balance to defendants. Defendants engaged in this operation on a large scale throughout the country, signing up, by their own admission, over 50,000 purported mail handler collection agents prior to the entry of the consent judgment.
The consent judgment enjoins defendants Unique Ideas Inc. and Ernie Tucker from misrepresenting directly or indirectly in connection with their offer for sale, or sale of their "proven-easy money-making method” a list of specific items as follows: (a) consumer purchasers of the plan can make a fortune of money through its use; (b) the plan is a proven money-making method; (c) the money-making capacity of the plan has been certified, notarized and documented; (d) consumer purchasers of the plan are supplied with the names and addresses of "guaranteed” mail order buyers; (e) Unique Ideas, Inc. is the sole manufacturer of "Mink Show/Offs” gift items; (f) a 10% sales order response can be expected from the mailing solicitation; and (g) Ernie Tucker made $35,000 in just one day at home in bed with the flu through use of the plan.
Defendants were further enjoined from misrepresenting the actual net profits to be earned on completed orders and were prohibited from selling the plan unless the income or profits described were reasonably likely to be achieved and the money-making capacity of the plan was supported by actual experience reasonably indicating the money-making results as described.
The Attorney-General documents herein that within five days of the entry of this judgment, defendant Ernie Tucker ordered envelopes for a new mailing and during the months of January and February, 1975, mailed over 2,000,000 pieces of material identical to those sent prior to the judgment. Defendants do not deny that the material sent after entry of judg *261 ment was substantially and materially identical. Rather they attempt to deny their willful violation of the judgment by a purely semantic distinction, characterizing the judgment as prohibiting only "misrepresentations” and arguing that there can be no violation of the judgment, unless the Attorney-General proves that the representations made are false.
In this regard, defendants merely state the obvious. The judgment certainly does not prohibit truthful representations. However, defendants’ circular reasoning inevitably leads to the patently absurd conclusion that both the Attorney-General and Justice Fine permitted a judgment to be entered which was in effect a nullity, leaving the public as well as the defendants in exactly the same position they were before judgment. In any event, it is unnecessary for this court to plumb the motivation behind the specific prohibitions further than to emphasize that they were considered necessary to the protection of the public interest. What is relevant herein is that defendants are bound by the terms of said judgment. Defendants’ implication that the Attorney-General and this court would engage in a meaningless exercise is not worthy of further comment.
Admittedly, it is axiomatic that to sustain a finding of contempt the judgment must be clearly expressed, the violation must appear with reasonable certainty, and the act complained of must be clearly embraced within the prohibited area. The judgment herein speaks for itself in very specific terms. The list of prohibited statements is set forth with precision. Indeed, the defendants’ booklet proclaims its violation just as clearly.
A comparison of defendants’ mailing materials with the judgment demonstrates with crystal clarity that defendants have repeatedly violated the specific language of the injunction. The material is replete with references to "proven” ways of making "easy money” or an "overnight fortune” and with language such as "legal” and "binding”, "guarantees”, "certified, notarized and documented results”. The booklet specifically repeats the representation that defendant Tucker made $35,000 in one day while in bed. Thus, the court finds blatant violations of the judgment, specifically with respect to items a, b, c, d, e and g therein.
Furthermore, considering the full impact of defendants’ booklet in light of the consent judgment and the other circumstances herein, such as the lightning speed with which defend *262 ant began his mailing anew after entry of judgment, defendants have violated the spirit as well as the letter of the judgment. The inescapable conclusion to be drawn is that defendants willfully disregarded said judgment, at least to the extent of the detailed items above.
The existence and extent of defendants’ disregard of the judgment with respect to item f and the other provisions thereof are not capable of resolution solely upon the papers presently before the court. This is so because defendant Tucker did change one of his claims in the current booklet. Thus, the parties being at issue as to item f and the other items of the judgment requiring documentary proof, this matter is referred to the Honorable Eugene J. Sullivan, Special Referee, to hear and report with recommendations as to the extent of defendants’ willful violation of the specific items a, b, c, d, e and g, and the extent of defendants’ willful violation of the other items of the judgment. Pending receipt of this report, the disposition of this motion is held in abeyance, and the attorneys are directed to report to the office of the Special Referees, room 308-M, within five days after publication of this decision with a copy of this order, to arrange a hearing date.
With respect to motion No. 100 to amend the order to show cause, and defendants’ cross motion to vacate the order, in view of the finding of contempt made herein and the documentation submitted by the Attorney-General demonstrating that defendants’ funds have been intermingled with and transferred to the account of Natures Eve Inc., the court finds that amendment to the order is necessary to protect the interests of the public. Accordingly, motion No. 100 to amend the order to show cause to include the account of Natures Eve Inc. is granted, and the cross motion denied.