Bellacosa, J.
(dissenting in part). My dissent is respectfully tendered solely with regard to the "revival and reinstatement of the General Business Law § 349 claims. I agree with the lower courts, including their rulings that these particular claims are no more sustainable or cognizable on these records than any of the other standard claims.
I dissent also because the precedential implications of the *351 Majority holding, as proposed, are beyond the intent, enactment and interpretation of this remedial statute. In particular, I conclude that no deceptive act or practice, which would mislead a reasonable consumer, has been alleged in these cases under this statute. I would therefore affirm the Appellate Division orders outright.
I.
In the Gaidon action, defendant’s motion to dismiss pursuant to CPLR 3211 was granted, dismissing plaintiffs’ complaint containing their causes of action for violations of General Business Law § 349. The standard applied in this case is whether a pleading and its factual allegations manifest any cause of action “cognizable at law” (Guggenheimer v Ginzburg, 43 NY2d 268, 275). Dismissal is appropriate when evidentiary material is considered where an alleged material fact “is not a fact at all and * * * no significant dispute exists regarding it” (id., at 275).
Here, the complaint must sufficiently set forth a “forbidden type of deception” (id., at 275). While the failure to disclose information may be found “less than candid, it cannot, as a matter of law, be found deceitful” when there is no evidence in the record to refute defendant’s assertions (see, St. Patrick’s Home for Aged & Infirm v Laticrete Intl., 264 AD2d 652, 655). The failure of a pleading to present a deceptive act or practice, under the sweep and provenance of General Business Law § 349, should render the asserted claims deficient on the face of, and at the outset of, the dispute brought to a court (see, id.).
Defendants moved in the Goshen action for summary judgment. Thus, reviewing the pleadings as well as the evidentiary materials, plaintiffs must present a triable issue of fact to defeat the motion. I conclude, as did the courts below, that no genuine triable issue of fact is presented on this record, and summary judgment was appropriately granted to defendants.
In the instant cases, plaintiffs essentially charge that the use of illustrations by defendants’ sales agents, depicting time lines at which premium payments might “vanish,” misled the consumers within the meaning of the statute. Additionally, in Goshen, plaintiffs claim that defendant MONY knew the use of the “vanishing premium” sales promotion was not viable and that the company attempted to conceal this awareness from the plaintiff class. The Goshen plaintiffs submitted affidavits purporting that the dividends illustrated by MONY were not *352 sustainable. In my view, on these records, the allegations do not measure up to cognizable causes of action necessitating a trial on the General Business Law § 349 claims.
II.
In 1970, the Legislature enacted section 349 of the General Business Law to “strengthen the consumer protection powers of the Attorney General by enabling him to obtain injunctions against all deceptive and fraudulent practices affecting consumers and by clarifying his powers to obtain restitution for defrauded consumers in such proceedings” (Governor’s Mem approving L 1970, chs 43 and 44, 1970 NY Legis Ann, at 472). Consumers were given a protection for an “honest market place” enforceable by the Attorney General (id., at 472). Section 349 tracked the actions of the FTC with respect to interpretation and enforcement of the Federal Trade Commission Act (15 USC § 45), in that agency’s effort to eradicate or penalize deceptive acts and practices (see generally, Matter of State of New York v Colorado State Christian Coll, of Church of Inner Power, 76 Misc 2d 50, 54).
In 1980, the New York Legislature enhanced this State’s protective mechanism. It gave a private right of action to allegedly wronged consumers to pursue consumer fraud claims personally (General Business Law § 349 [h]). This powerful tool was to “supplement the activities of the Attorney General in the prosecution of consumer fraud complaints” (Governor’s Mem approving L 1980, ch 346, 1980 NY Legis Ann, at 147). Moreover, the enactment of this statutory remedy was not to deprive plaintiffs of any common-law remedies (see generally, Schuster v City of New York, 5 NY2d 75, 85 [statutory remedy is “merely cumulative”]).
I am not persuaded that support exists to justify a further enhancement of General Business Law § 349 to make it a “catch-all” remedy. It should not be construed as providing all-encompassing redress. To interpose such a procedural and remedial disincentive against aggrieved persons pursuing longstanding traditional remedies at common law, as well as other statutory and regulatory measures affecting a gigantic industry like insurance — and precedentially all others — is a remarkable step and development that I do not believe is warranted or intended.
III.
Section 349, unlike other States’ deceptive practice statutes, does not supply a definition of “deceptive acts or practices.” *353 Noting the undeniable remedial nature of section 349, this Court proportionately recognized the potential for overbreadth inherent in the interpretation and application of the statute. Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank (85 NY2d 20) announced the test which should determine whether defendants here violated section 349. The standard is whether “defendant is engaging in an act or practice that is deceptive or misleading in a material way” and whether “plaintiff has been injured by reason thereof’ (id., at 25). While I agree with the Majority’s acknowledgment of the appropriate test, my application of it results in an affirmance and resolution against the groundbreaking availability of New York’s General Business Law § 349. Based on the Majority’s holding, a wide expansion of the theory underlying this statutory remedy will henceforth be operative.
Yet, to avoid the possibility of “excessive litigation” (class or individual) under General Business Law § 349, this Court evoked “ ‘an objective definition of deceptive acts and practices, whether representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances’ ” (Karlin v WF Am., 93 NY2d 282, 294, quoting Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, supra, 85 NY2d, at 26; contrast, Note, New York Creates a Private Right of Action to Combat Consumer Fraud: Caveat Venditor, 48 Brook L Rev 509, 548).
The judicial framework and resolution can be determined as a matter of law or fact (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, supra, 85 NY2d, at 26). Particularly in omissions cases, the statute does not require businesses to “guarantee that each consumer has all relevant information specific to its situation. The scenario is quite different, however, where the business alone possesses material information that is relevant to the consumer and fails to provide this information” (id., at 26).
The capacity and potential of the material to qualify as a misleading act that deceives must be assessed in individual cases and circumstances. The determination of the deceptiveness of the conduct that bears on the reasonableness of the consumer should not be bifurcated between the sales materials and the contract policies themselves, as the Majority’s analysis does. That is a commercially unrealistic segmentation that artificially skews the statutory reach.
Deception requires a misrepresentation of fact under the whole set of dealings of the parties (see generally, State of New *354 York v Unique Ideas, 85 Misc 2d 258, affd in part, mod as to damages 56 AD2d 295, mod as to damages 44 NY2d 345). The language of the policies, which included statements that premiums are regularly due, cannot be so facilely cast aside in determining whether a misrepresentation of fact was alleged which would mislead a reasonable consumer, acting reasonably, into buying that policy. The reasonableness of the consumer viewpoint in my judgment of the statute, ought to be evaluated in light of all the facts before the consumers — the sales promotion, the written illustrations expressing no guarantees, and the policies excluding extraneous facets from the sales transaction and agreement. In other words, the integrated transaction determines the availability of the statute, not just the initial contact, sales pitch or some predicate facet.
IV.
Thus, application of Oswego’s standards to plaintiffs’ General Business Law § 349 claims demonstrates, as a matter of cogent, even compelling, record dealings, that plaintiffs fail to propound cognizable claims or a triable issue of fact under the statute. The complaints, and the accompanying submissions in Goshen, simply do not allege a sustainable basis or theory that plaintiffs were materially deceived and harmed by defendants’ actions — that is, by the entire array of interrelated steps leading to the purchase of the policies.
In Gaidon, the asserted deceptive act is that defendant Guardian, through its sales presentations and policy illustrations, misrepresented that payment of premiums only during the first several years of the policy would suffice to carry out the cost of the policy for the life of the insured. Plaintiffs allege that this illustrative sales promotion induced purchase of the policies and falls within the limitless statute. Yet, the express terms of the policy plainly indicate the duration of the required premium payments; and the written policy illustrations used by defendant Guardian specifically stated they were neither part of the actual insurance policy, nor that the dividends were guaranteed.
Moreover, to the extent that plaintiffs in Gaidon argue that they pleaded a cognizable section 349 claim based on defendant Guardian’s use of misleading dividend scales in its illustrations, plaintiffs’ argument is baseless. The illustrations accord with applicable official regulations which require that “[i]f dividends are illustrated, they must be based on the *355 insurer’s current dividend scale and the illustration must contain a statement to the effect that they are not to be construed as guarantees or estimates of dividends to be paid in the future” (11 NYCRR 219.4 [n]). The Majority’s conclusion— that the use of standard, officially approved and authorized illustrations amounts to a deceptive practice under General Business Law § 349 — is a breakaway proposition with troubling precedential implications and a fundamental unfairness by changing the rules of trade after the fact.
Similarly, in Goshen, the certified class members sought to recover under General Business Law § 349 based on their understanding of written policy illustrations that premium payments would only have to be paid for a limited number of years. Defendant MONY utilized different versions of the written illustrations. All illustrations, however, included statements that they were not valid without a “Limitations and Definitions” form, which, at minimum, cautioned any potential purchaser that only the policy itself with the application is the entire contract. The policies then repeated the same admonition that they alone constituted the entire agreement of the parties. To wholly sideline these pervasively employed integration clauses in these circumstances is a discretely portentous precedential development. That alone justifies my dissenting expression as fair notice to the Bench and Bar, and as an incentive for legislative consideration of some reasonable limitations on the sweep of the law.
As an additional argument, the plaintiff class in Goshen urges that MONY executives knew that the “vanishing premium” concept was not viable, given inevitably uncertain predictions about future economic conditions. But that unpredictability is a known constant to the world at large, not just to insurance executives.
Oswego Laborers’ Local 214 Pension Fund (supra, at 26) further teaches another axiom: MONY was not required to “guarantee that each consumer has all relevant information specific to its situation.” The sales nomenclature of “vanishing premium” does not even denote a type of life insurance policy (see, Fischel and Stillman, The Law and Economics of Vanishing Premium Life Insurance, 22 Del J Corp L 1, 7). Rather, the “vanishing premium” notion is a marketing technique and advertising device based on a proposed financing spread sheet which provides “a vanishing-premium option or rider to the basic life insurance policy” (Fischel and Stillman, op. cit., at 7, n 28). The illustrations “are based on projections of certain *356 outside economic factors which may or may not come true” (Fischel and Stillman, op. cit., at 7, n 28 [emphasis added]). Consumers know as a matter of common sense and knowledge, or ought to be reasonably charged with knowing that truism. Besides, they were informed of this very point in writing— twice at least. The illustration materials themselves and the actual policies so declare. They are unassailable documentary proofs, not wispy disappointment claims that the deals did not turn out as hoped for or expected.
The point at which the premium payment obligation “vanishes,” as advertised through the illustrations, does not imply, moreover, that the policyholder will never again have an obligation to pay premiums. Rather, the illustrations project that the policy may be “self-perpetuating,” at a point when future premium payments should be paid up using the generated policy dividends (Fischel and Stillman, op. cit., at 7, n 28). Reasonable consumers should not be allowed to infer — by operation of law through interpretive judicial rulings, statutes and regulations — that external economic factors would remain static and that the cessation of cash premium payments would be a certainty, for lack of which statutory liability is primed. That consequence defies history and fair dealing on a common sense landscape.
Plaintiffs’ allegations that they were deceived into believing that the premium payments would inevitably cease at a fixed point in time is, moreover, contradicted by all the available documentation. Courts should not ignore the explicit language of the insurance contracts and the reasonable understanding and expectation concerning the ineffability of extrinsic economic and market forces. Everyone should be charged with the plain fact that only the unknowable future could ultimately shape and control these matters.
Next, the use of interest rate assumptions in the policy illustrations should not be deemed realistically to have the capacity to mislead prospective policyholders. That is a too far-out legal fiction. The probable level of future interest rates is, again, most certainly and most commonly known and appreciated as something not solely within an insurance company’s or anyone else’s ability to forecast (see, Fischel and Stillman, op. cit., at 14). Even Alan Greenspan and the Federal Reserve Board hedge their “bets” and just do their best. Furthermore, any general information defendants had involving market projections was the type of information plaintiffs, indeed anyone, “could reasonably have obtained” (Oswego Laborers’ *357 Local 214 Pension Fund v Marine Midland Bank , supra, 85 NY2d, at 27), on their own, through financial advisors or via the “Internet”.
Plaintiffs argue — and the Majority adopts — the proposition that defendants created a misleading impression of these policies by not revealing their potential downsides. This aspect, as that syllogism sets the stage for the future, helps to drive the General Business Law § 349 claims in these cases. My simple answer' is that the entire insurance industry, by its nature, insures many things. But to derive an insurance obligation out of this new “pros and cons” balancing technique is a far-reaching concept and legal responsibility, bound to confound any rate or risk underwriter. Risk projections and re-allocation on this basis constitute a major shift for any type of sales-oriented business. By court decree instead of market forces they must, when emphasizing the positive aspects of their policies or products, also provide minimizing features and negatives (contrast, Fischel and Stillman, op. cit., at 15).
To hold, even in part, that giving a product its best sales “face,” even with some “puffery” and artfully spun advertising, is actionable under General Business Law § 349 pushes this consumer protection statute into uncharted and unintended territories. “Puffing” defenses — a seller’s claim that no reasonable person would believe some sales promotion to be literally true — should have some reasonable place in the General Business Law § 349 universe as to who bears the risk of the bargain (see generally, Pitofsky, Beyond Nader: Consumer Protection and the Regulation of Advertising, 90 Harv L Rev 661, 677). If not, this statute launches limitless liability.
Reasonable consumers acting reasonably recognize sales pitches and ordinarily discount them accordingly. In addition, to acknowledge that consumers understand that future interest rates will affect their future premium rates is reasonable and even respectful of individual intelligence, personal accountability and good common sense (see, Fischel and Stillman, op. cit., at 16).
Based on the records of these cases, I agree with the lower courts that plaintiffs failed to show that defendants engaged in materially misleading or deceptive acts or practices. The alleged representations made by defendants were not “likely to mislead a reasonable consumer acting reasonably” (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, supra, at 26). Prospective market forces predominantly control *358 here, and a remedial rescue by statute or judicial gloss on a statute — after the economic facts inexorably unfold under their own power — ought not become the benevolent standard for shifting fault, reallocating risk and relieving individuals of some measure of reasonable responsibility and private accountability.
In sum, I would wholly affirm the orders of the Appellate Division in the actions entitled under Gaidon and Goshen. While I agree with the Majority rationale and result on plaintiffs’ common-law fraud claims, I respectfully dissent for the reasons given and conclude that plaintiffs have not propounded cognizable or triable General Business Law § 349 claims.
Chief Judge Kaye and Judges Levine, Ciparick and Wesley concur with Judge Rosenblatt; Judge Bellacosa dissents in part and votes to affirm in a separate opinion; Judge Smith taking no part.
In Gaidon v Guardian Life Ins. Co.: Order modified, etc.
In Goshen v Mutual Life Ins. Co.: Order modified, etc.