(January 16, 1992)

■ The People of the State of New York ex rel. Richard L. Higgins, as Commissioner of the New York State Division of Housing and Community Renewal, Respondent, v Philip

Peranzo et al., Appellants.—Per Curiam.

In October 1988, Thomas Groves, Elizabeth Carey and her children (hereinafter the tenants) began their occupancy of a lot in McPerry Estates Mobile Home Park (hereinafter the park) in the Town of Guilford, Chenango County. The tenants had a verbal month-to-month periodic tenancy. At the time the tenants commenced their tenancy, the park was owned by Elaine Boeck. Respondents purchased the park from Boeck in March 1989. In April 1989, the tenants' septic system began to malfunction, which eventually resulted in the spilling of raw sewage both inside and outside of the tenants' mobile home. The tenants promptly notified respondents of the septic system problem and, upon respondents' failure to remedy the problem, hired someone at their own expense to try to fix the septic system. These repairs also failed to improve the situation. Therefore, the tenants notified appropriate State and local agencies. The tenants also began withholding their rent. Subsequently, on June 19, 1989, the tenants received a notice to quit from respondents which stated that they had to leave the premises within 30 days because the tenants allegedly failed to keep up the maintenance of the cesspool on their lot. In August 1989, a shotgun was fired at midnight by an unknown individual outside the tenants' home, which the tenants believed was an attempt by respondents to intimidate them into leaving the site.

Shortly thereafter, petitioner commenced this special proceeding by order to show cause on behalf of the tenants pursuant to Real Property Law § 233 (v). The order to show cause contained a request for a temporary restraining order enjoining respondents from attempting to evict the tenants and from using violence to threaten or intimidate them. However, in November 1989 the tenants, without notice to respondents, voluntarily vacated their rental site at the park. The tenants ultimately received all the withheld rent for the months of June through November 1989 (that had been placed in escrow). In its decision, Supreme Court found that respondents were guilty of five violations under Real Property Law § 233. The court, among other things, assessed a $1,000 civil penalty for each violation, permanently enjoined respondents from committing further violations, and awarded petitioner an

allowance in the sum of $2,000 against each respondent (totaling $4,000). This appeal by respondents followed.

Real Property Law § 233 (e) requires mobile home park operators to offer every mobile home tenant *prior to occupancy* the opportunity to sign a one-year lease. Because respondents purchased the mobile home park here after the tenants' occupancy had commenced, they could not comply with the literal requirements of the statute. Although they should not be permitted to evict the month-to-month tenants during the one-year period following the start of the tenants' occupancy *(see, A.K.A.B.& E. Mobile Home Rentals v Marshall,* 114 Misc 2d 622), there is no basis for finding respondents guilty of a statutory violation actually committed by the prior owners.

We reject respondents' contention that Supreme Court erred in finding them guilty of violating Real Property Law § 233 (g) (3), *(l)* and (m) without an evidentiary hearing. CPLR 409 (b) empowers Supreme Court in a special proceeding "to make summary determinations upon the pleadings, papers and admissions to the extent that no triable issues of fact exist" *(People ex rel. Higgins v Leier,* 164 AD2d 492, 496). Here, in examining the affidavit and papers submitted by respondents, it is apparent that Supreme Court did not err with respect to these three charged violations. Respondents admitted in their answer that they gave the tenants less than 90 days' notice of a projected rent increase *(see,* Real Property Law § 233 [g] [3]). Similarly, respondents do not deny that they did not have a designated agent in close proximity to their mobile home park in April and May 1989 to handle emergencies as required by Real Property Law § 233 *(l).* They state only in an affidavit that they allegedly have presently hired such an agent for their park. Such a statement cannot be viewed as a denial of the tenants' attested fact that there was no designated agent available to them in April and May 1989, and Supreme Court was justified in finding no triable issue of fact on this issue.

As for respondents' argument that a triable issue of fact exists with respect to their alleged violation of the implied warranty of habitability contained in Real Property Law § 233 (m), this argument is also meritless. Nowhere do respondents dispute the existence of septic problems exactly as described in the petition and the tenants' affidavit. They merely allege that the tank was pumped twice in June 1989 and that they ultimately had to seal off the site completely and not allow any tenants to live there. Conspicuously absent from both respondents' answer and affidavit is language amounting to an affirmative defense that the septic problems were caused by

actions of the tenants. Respondents only state that they initially believed it was the tenants' responsibility to repair the problem but later revised that view and attempted to repair it themselves. Accordingly, we also find no error in Supreme Court's finding of guilt and imposition of a fine with respect to this violation.

On the retaliatory notice of eviction issue (see, Real Property Law § 233 [n] [1] [a]), Supreme Court did not err in finding a violation based upon the parties' papers. The septic problem, as previously noted, breached the implied warranty of habitability (Real Property Law § 233 [m]) and, therefore, as a matter of law, the responsibility for its repair was with respondents, not the tenants. The notice to quit was clearly served in response to the tenants' complaints about the septic problem. It is not necessary, as the dissent would require, that the notice to quit state that the eviction is in retaliation for the tenants' formal complaints. Although respondents were well aware of the septic problems in April 1989, they did not serve the notice to quit until June 1989, shortly after the tenants complained to the authorities. Because of the timing of the notice to quit and because of the absence of any legitimate basis for evicting the tenants, the only logical conclusion to be drawn from the undisputed objective facts is that the tenants' complaints prompted respondents to serve the notice to quit. Respondents' subsequent self-serving claim to the contrary is insufficient to create a question of fact. Ignorance of the law, which prompted respondents' alleged misunderstanding as to which party was responsible for the repairs, is no excuse for the clear violation of Real Property Law § 233 (n) (1) (a), although it can be considered in deciding the appropriate penalty for the violation.

The civil penalties and allowances imposed by Supreme Court were the harshest permitted by the statute (Real Property Law § 233 [v]). By setting maximum amounts instead of fixed amounts, the Legislature clearly vested in the court not only the authority but also the obligation to exercise its discretion and, based upon the facts and circumstances of each case, including the nature of the conduct which prompted the proceeding, to select the appropriate penalties and allowances from the broad range created by the Legislature. In the absence of a statutory minimum, this broad discretion includes the power to impose no penalty at all for a violation if the facts and circumstances justify such a result (see, State of New York v Town of Wallkill, 170 AD2d 8, 11-12). It is our view that Supreme Court's imposition of the harshest penalty

without any explanation of the grounds for selecting those amounts instead of some lesser amount does not fulfill the obligation imposed by the statute and does not provide this court with any basis for the exercise of its power of appellate review.

The order should therefore be modified by reversing so much thereof as found respondents guilty of violating Real Property Law § 233 (e) and imposed civil penalties and allowances, and the matter should be remitted for further proceedings, including a hearing if necessary, to determine the appropriate civil penalties and allowances.

Levine, Mercure and Casey, JJ., concur.

Harvey, J. (concurring in part and dissenting in part). While we are in agreement with most of the issues explored in the majority's decision, we must express our disagreement with the conclusion that respondents were guilty of retaliatory eviction (see, Real Property Law § 233 [n] [1] [a]) as a matter of law based on the parties' papers.

In pertinent part, the applicable statutory section reads as follows: "No mobile home park owner or operator shall serve a notice to quit upon any mobile home tenant * * * in retaliation for: (a) A good faith complaint * * * to a governmental authority of the mobile home park owner's or operator's alleged violation of any health or safety law, regulation, code, or ordinance, or any law or regulation which has as its objective the regulation of premises used for dwelling purposes" (Real Property Law § 233 [n] [1]). While the tenants in this case claim that the notice to evict was served in response to the complaints to governmental agencies, respondents deny this allegation and claim that it was served due to a misunderstanding over who was responsible for repairs. An examination of the notice to quit contained in the record states on its face that it was served because of the tenants' failure to maintain the sewer system. No mention was made of any formal complaints made by the tenants as the cause of the eviction notice.

Significantly, the majority acknowledges the possibility that respondents actually attempted to evict the tenants because of their own mistaken belief in the law. Illogically, the majority goes on to state that this fact must mean that the notice was served to retaliate against the tenants for complaining to governmental agencies. We cannot accept this conclusion. The issue of whether the notice was served as a result of mistaken belief in the law or in retaliation for the tenants' complaints

presents a clear conflict that must be resolved before liability can be imposed. The statute only prohibits the latter conduct, not the former. Accordingly, we believe that the issue of whether respondents violated Real Property Law § 233 (n) (1) (a) should be sent back for a factual hearing.

Weiss, J., concurs. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as found respondents guilty of violating Real Property Law § 233 (e) and imposed civil penalties and allowances; matter remitted to the Supreme Court for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed.