*283 OPINION OF THE COURT
Lucy Billings, J.
In this landlord-tenant holdover proceeding, the petitioner landlord sought to terminate the tenancy based on the tenant’s installation of windows in her apartment, No. 12E at 36 Gramercy Park East, New York County, without the landlord’s consent and in violation of the parties’ lease. The respondent tenant claimed that she did not install the windows and that the landlord sought to terminate her tenancy due to her complaints about the conditions in the premises.
On the basis of all the evidence adduced at trial the court found that petitioner Mayfair York L. L. C. (Mayfair York) did not meet its burden to prove by a preponderance of the evidence that respondent Beverly Zimmerman contracted on her own to install new windows in her apartment. Based on the finding that respondent did not change the windows in her apartment, the court concluded that she did not violate the prohibition in the parties’ lease against altering or improving the apartment. Therefore the court dismissed petitioner’s proceeding against Beverly Zimmerman based on the claim that.she violated the parties’ lease.
The court now turns to respondent Beverly Zimmerman’s counterclaim for retaliatory eviction.
I. THE APPLICABLE STATUTORY PROVISIONS
Real Property Law § 223-b, applicable to all rental residential premises with four or more units (Real Property Law § 223-b [6]), provides that:
“1. No landlord of premises or units to which this section is applicable shall serve a notice to quit upon any tenant or commence any * * * summary proceeding to recover possession of real property in retaliation for:
“a. A good faith complaint, by or in behalf of the tenant, to a governmental authority of the landlord’s alleged violation of * * * any law or regulation which has as its objective the regulation of premises used for dwelling purposes.”
Real Property Law § 223-b (3) subjects a landlord to a civil action for damages where the landlord has violated this statute.
Subdivision (5) creates a rebuttable presumption that the landlord acted in retaliation if the tenant establishes that the landlord served a notice to quit upon the tenant or commenced a summary proceeding to recover possession from the tenant within six months after a complaint described in subdivision *284 (1) (a). (Salvan v 127 Mgt. Corp., 101 AD2d 721, 722 [1st Dept 1984]; 442 Sterling Place Realty Corp. v Smith, NYLJ, Sept. 30, 1998, at 28, col 5 [Civ Ct, Kangs County].) Subdivision (5) further provides, however, that: “the presumption shall not apply in an action or proceeding based on the violation by the tenant of the terms and conditions of the lease.” Beverly Zimmerman’s counterclaim for retaliatory eviction requires the court to answer a question of apparent first impression regarding the interpretation of Real Property Law § 223-b (5).
II. OPERATION OF THE PRESUMPTION
Mayfair York’s proceeding against its tenant Beverly Zimmerman was based on an alleged violation by the tenant of the parties’ lease. If the court now has dismissed that proceeding, because the evidence failed to establish a lease violation by the tenant, does the presumption operate?
In this particular case the presumption is critical to Ms. Zimmerman’s claim of retaliatory eviction. She did testify that she made several complaints, in good faith, to the New York City Department of Housing Preservation and Development (HPD) or the New York State Division of Housing and Community Renewal (DHCR) regarding her housing conditions over the years at 36 Gramercy Park East: testimony that was credible and unrebutted. Letters in May 1995 from Kathy Frangipane, petitioner’s managing agent, to Ms. Zimmerman admitted in evidence without objection also refer to Ms. Zimmerman’s complaints to HPD regarding conditions in her apartment requiring plastering and painting. (Cf., Paikoff v Harris, 178 Misc 2d 366, 368-369 [Civ Ct, Kings County 1998].)
The evidence adduced failed to establish, however, that Mayfair York sought to terminate Ms. Zimmerman’s tenancy in retaliation for any of those complaints or any other tenant action protected by Real Property Law § 223-b. (See, Real Property Law § 223-b [1] [b], [c].) Thus, without the presumption, the evidence otherwise did not establish the requisite retaliatory motive on the landlord’s part. If the presumption establishes retaliatory eviction, however, Mayfair York in turn has failed “to provide a credible explanation of a non-retaliatory motive” for its acts, other than the lease violation that the weight of credible evidence failed to establish. (Real Property Law § 223-b [5]; see, People ex rel. Higgins v Peranzo, 179 AD2d 871, 874 [3d Dept 1992]; 442 Sterling Place Realty Corp. v Smith, NYLJ, Sept. 30, 1998, at 28, col 5, supra; Adar Co. v Snyder, NYLJ, July 9, 1997, at 34, col 6 [Nassau Dist Ct].)
*285 Surprisingly, the court has found no authority addressing whether the presumption operates in this situation. The language and purpose of Real Property Law § 223-b, however, logically point to the conclusion that the statutory presumption does operate.
If the exemption from Real Property Law § 223-b (5)’s presumption of retaliatory eviction were to apply where a landlord pursues an unmeritorious claim based on a lease violation, a landlord could always avert the statutory presumption simply by commencing a proceeding based on an allegation that the tenant violated the rental agreement. No tenant whom a landlord sought to evict based on an alleged violation of the rental agreement could avail herself of the presumption. Such a construction of the exemption from section 223-b (5) would permit any landlord to avert the presumption with impunity. Therefore the exemption from the presumption must have been designed to apply in other circumstances.
The statute’s practical operation supports this conclusion. A retaliatory eviction claim is mainly effective in a holdover proceeding, as opposed to a nonpayment proceeding, as the claim does not relieve the tenant of the obligation to pay rent. (Real Property Law § 223-b [4]; 390 W. End Assocs. v Raiff, 166 Misc 2d 730, 734 [App Term, 1st Dept 1995]; Merit Mgt. Co. v Ruscio, NYLJ, Feb. 4, 1992, at 21, col 7 [App Term, 1st Dept].) The circumstances to which the exemption applies, tenants’ violations of their rental agreements, are the main grounds for holdover proceedings. If ever there ought to be a situation where a tenant should be able to use the presumption in Real Property Law § 223-b (5), it would be where she has established the lack of merit to a landlord’s proceeding based on an alleged violation of the rental agreement, following, with the requisite proximity, activity protected by section 223-b (1) (a) through (c). The intent behind section 223-b (5) is to presume a causal connection between that activity and the landlord’s unmeritorious proceeding to establish a prima facie claim of retaliatory eviction. Here, if the tenant established the protected activity and the landlord’s unmeritorious proceeding within the requisite period, she should be able to avail herself of the presumption to draw a causal connection between the two.
For all these reasons, to apply the exemption from the statutory presumption when the landlord does not have a meritorious claim based on a lease violation would gut the purpose of the presumption. Instead, the exemption from the statutory presumption is designed to apply when the landlord does have *286 a meritorious claim based on a lease violation, yet the tenant claims the landlord is using the lease violation to evict the tenant when the landlord’s motive is to evict the tenant because of a complaint or other protected activity. In that situation, the tenant may not take advantage of the presumption and must resort to affirmative proof of the retaliatory motive. (Bayview Gardens v Sperrazza, NYLJ, Sept. 10, 1997, at 29, col 1 [Civ Ct, Kings County]; Kew Gardens Assocs. v Regan, 106 Misc 2d 267, 270 [Civ Ct, Queens County 1980].)
Here, Ms. Zimmerman may take advantage of the presumption, assuming she has established the requisite circumstances triggering the presumption. (Real Property Law § 223-b [5] [a]-[c].)
III. GOOD FAITH COMPLAINT BY OR ON BEHALF OF THE TENANT
Mayfair York served on Ms. Zimmerman a notice to cure on January 6, 1998, and a notice of termination of her tenancy on January 23, 1998, as a predicate to commencing this summary proceeding to recover possession of her apartment shortly afterward. Service of the petition and notice of petition on her was completed by mail on February 12, 1998. If Ms. Zimmerman or a person on her behalf made a good faith complaint to HPD or DHCR regarding her housing conditions within six months before those dates, then that complaint establishes that Mayfair York commenced this proceeding in retaliation.
Petitioner’s exhibit 6, a notice of a violation cited by HPD pertaining to windows on the 12th floor that caused Ms. Frangipane to inspect apartment 12E, originated during that period. Because the owner and managing agent believed the violation pertained to apartment 12E, they may well have believed the violation originated from a complaint by or on behalf of Ms. Zimmerman, and the owner’s subsequent actions could have been motivated by that belief. As discussed above, however, (1) the tenant did not establish such a motive, independent of the statutory presumption, and (2) the notice actually refers to “SOUTHWEST APARTMENT 12W.” (Petitioner’s exhibit 6.)
On the one hand, a “good faith complaint * * * by or in behalf of the tenant” in Real Property Law § 223-b (5) (a), triggering subdivision (5)’s presumption, could be interpreted to include such a complaint as perceived by the landlord. This interpretation has arguable appeal, as the subdivision’s purpose is to establish the landlord’s motive for its subsequent actions.
On the other hand, and more precisely, the subdivision’s purpose is to establish the retaliation through independent *287 facts establishing the presumption and not through actual proof of the landlord’s motive. In addition, the “good faith” of the tenant or person on her behalf cannot logically be established based solely on the perception of another, the landlord. The qualifier “good faith” would be meaningless if the term “good faith” complaint were so construed.
The court need not resolve this question regarding the interpretation of Real Property Law § 223-b (5), however, because other evidence establishes Ms. Zimmerman’s good faith complaints to HPD concerning her apartment conditions well within any of the six-month periods before the predicate notices or pleadings commencing this proceeding. Both parties asked the court to take judicial notice of HPD’s computerized data relating to its enforcement of housing maintenance standards, which is visually displayed on the court’s computer screen, pursuant to Multiple Dwelling Law § 328 (3) (a). This subdivision provides: “In any action or proceeding before the housing part of the New York city civil court * * * the visually displayed * * * computerized violation files of the department responsible for maintaining such files and all other computerized data as shall be relevant to the enforcement of state and local laws for the establishment and maintenance of housing standards * * * shall be prima facie evidence of any matter stated therein and the courts shall take judicial notice thereof.” The court must take judicial notice of the HPD computerized enforcement data without further authentication or foundation and may determine which of the available data impact on the tenancy and premises in question and what support those data lend to the tenant’s defenses. (Hoya Saxa v Gowan, 149 Misc 2d 191, 192-193 [App Term, 1st Dept 1991].)
I have reviewed the HPD computerized data for 36 Gramercy Park East. First of all, the data confirm that the violation pertaining to windows on the 12th floor that caused Ms. Frangipane to inspect apartment 12E in the fall of 1997 in fact pertained to apartment 12W. The data also show, however, that Ms. Zimmerman did make complaints to HPD regarding the conditions in her apartment during the six-month period under Real Property Law § 223-b (5), however the period is calculated. She made complaints after August 12, 1997, six months before this proceeding was commenced, and before January 6, 1998, when the notice to cure was served, as well as shortly before and after those dates.
In particular, HPD received complaints from Ms. Zimmerman on September 11, 1997, regarding a “leaky ceiling and *288 wall in bedroom and living room,” and November 3, 1997, regarding “paint peeling and bulging in bedroom ceiling, living room wall rotting from leak.” HPD also received a complaint from her on June 24, 1997, regarding water leaking through the bricks in the wall into the living room during rainy weather, indicating that the “building needs pointing.” This complaint was processed on July 8, 1997, and an HPD inspection was scheduled. HPD inspected Ms. Zimmerman’s apartment on July 21, 1997, and cited a hazardous violation requiring the owner to repair the broken or defective plastered surfaces and paint the ceiling in the northeast room in a uniform color. HPD received further complaints from Ms. Zimmerman on January 29, 1998, regarding “leaking in living room from bricks cracking, water near outlet in living room, leak in bedroom, from roof, plaster peeling in bedroom, unkeyed pieces hanging,” and the next day regarding “water seeping through walls when raining in living room, water damaged ceiling in bedroom.”
The September and November 1997 complaints alone more than establish the requisite circumstances triggering the presumption. (Real Property Law § 223-b [5] [a].) Together with the preceding and subsequent complaints and enforcement actions, these HPD computerized data show a history of complaints by Ms. Zimmerman, validated by HPD inspection reports, regarding serious and persistent conditions affecting the habitability of her apartment, and warranting concern on the part of both tenant and owner.
Therefore respondent has proved that she made at least two good faith complaints to HPD regarding the conditions in her apartment within six months before Mayfair York commenced this proceeding or served her with any of the predicate notices. By the operation of Real Property Law § 223-b (5) those complaints establish that Mayfair York commenced this proceeding in retaliation, and Mayfair York has failed to rebut that presumption. Respondent thus has prevailed on her counterclaim for retaliatory eviction.
IV. DAMAGES
Despite Ms. Zimmerman’s success on her counterclaim, she adduced scant evidence at trial concerning any damages for compensable injuries she suffered as a result of the retaliatory eviction. Both parties requested an opportunity to submit further memoranda on this issue, however, after the court ruled *289 on the counterclaim. Therefore respondent may serve and file a memorandum on her measurable damages within 30 days of the date of this decision and order. Petitioner likewise may serve and file a response within 30 days after service of respondent’s memorandum. The memoranda must be limited to the issue of damages and be based only on the evidence already in the record.
[Portions of opinion omitted for purposes of publication.]