[805 NYS2d 175]

In the Matter of the PEOPLE OF THE STATE OF NEW YORK, by ELIOT SPITZER, as Attorney General, Respondent, v APPLIED CARD SYSTEMS, INC., et al., Appellants.

Third Department, December 1, 2005

## APPEARANCES OF COUNSEL

*Cooper, Erving & Savage, L.L.P.,* Albany (*Martin C. Bryce Jr.* of *Ballard, Spahr, Andrews & Ingersoll, L.L.P.,* Philadelphia, Pennsylvania, admitted pro hac vice, of counsel), for appellants.

*Eliot Spitzer, Attorney General,* Albany (*Mark D. Fleischer* of counsel), for respondent.

## OPINION OF THE COURT

PETERS, J.

Respondent Cross Country Bank, Inc. (hereinafter CCB) provides credit cards to consumers who are otherwise unable to qualify for credit. Respondent Applied Card Systems, Inc. (hereinafter ACS) services CCB's accounts and engages in collection activities. Petitioner contends that CCB was representing, in direct mail solicitations, that prospective consumers would be approved for a credit limit up to $2,500 when, in reality, credit limits were often less than $400. Each account was assessed a $100 application fee and a $50 annual membership fee immediately upon the opening of the account, often leaving the consumer with far less credit than they had originally anticipated. This led to a downward spiral of accruing interest, late fees and over-limit penalties. Moreover, unbeknownst to consumers, CCB allegedly enrolled them in third-party membership benefit programs for which a fee was immediately assessed

upon the account. One such program, the Credit Account Protection (hereinafter CAP) program, was virtually useless to New York consumers. Petitioner further alleged that ACS employees would harass consumers by telephone wherein they would, among other things, misrepresent their identities to facilitate contact with the consumer, call them at work after having been instructed not to do so, use obscene and abusive language, and make unauthorized debits from their checking accounts.

In April 2003, petitioner commenced this special proceeding pursuant to CPLR 409 (b) to permanently enjoin respondents from engaging in these activities. It alleged violations of Executive Law § 63 (12), General Business Law §§ 349 and 350, and General Business Law article 29-H. Respondents denied the allegations and raised numerous affirmative defenses. Upon Supreme Court's issuance of a permanent injunction preventing respondents from engaging in the challenged activities, this appeal ensued.

Special proceedings brought pursuant to CPLR 409 (b) are subject to the same standards that apply to a motion for summary judgment (*see* CPLR 409 [b]; *Matter of Port of N.Y. Auth. [62 Cortlandt St. Realty Co.]*, 18 NY2d 250, 255 [1966], *cert denied sub nom. McInnes v Port of N.Y. Auth.*, 385 US 1006 [1967]; *Matter of People v Telehublink Corp.*, 301 AD2d 1006, 1007 [2003]). Under Executive Law § 63, the Attorney General may utilize CPLR 409 (b) to seek injunctive relief against any business engaged in repeated fraudulent or illegal conduct in the transaction of business.[1] The test is whether the act complained of "has the capacity or tendency to deceive, or creates an atmosphere conducive to fraud. Executive Law § 63 (12) was meant to protect not only the average consumer, but also 'the ignorant, the unthinking and the credulous' " (*People v General Elec. Co.*, 302 AD2d 314, 314 [2003] [citations omitted], quoting *Guggenheimer v Ginzburg*, 43 NY2d 268, 273 [1977]). As to the claims alleging deceptive business practices or false advertising under General Business Law §§ 349 and 350, the Attorney General was required to establish that respondents engaged " 'in an act or practice that is deceptive or misleading in a material way and that [the consumer] has been injured by

---

1. Such conduct has been defined as "any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions" (Executive Law § 63 [12]).

reason thereof' " (*Small v Lorillard Tobacco Co.*, 94 NY2d 43, 55 [1999], quoting *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 25 [1995]; *accord Solomon v Bell Atl. Corp.*, 9 AD3d 49, 54 [2004]). While the proof must show that the representations or omissions are "likely to mislead a reasonable consumer acting reasonably under the circumstances" (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, supra* at 26), for conduct to be actionable it need "not necessarily rise to the level of fraud" (*Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d 330, 343 [1999]); even omissions may be the basis for such claims (*see Bildstein v MasterCard Intl., Inc.*, 2005 WL 1324972 ,*3, 2005 US Dist LEXIS 10763, 10-11 [SD NY, June 6, 2005]).

■ Reviewing these solicitation offers as a whole (*see Matter of Lefkowitz v E.F.G. Baby Prods. Co.*, 40 AD2d 364, 368 [1973]), and recognizing that the interpretations of the Federal Trade Commission Act (*see* 15 USC § 45 *et seq.*) are useful in determining the aforementioned violations under both the Executive Law and General Business Law (*see Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, supra* at 26; *Matter of State of New York v Colorado State Christian Coll. of Church of Inner Power*, 76 Misc 2d 50, 54-55 [1973]), we agree that the violations were established as a matter of law. The offers had a prominent display informing consumers that they had been "pre-approved" for a credit limit up to $1,000 or $2,500. They did not state that most consumers who received these solicitations do not receive even half of the amount listed. While minimum credit limits were detailed in the solicitations, no disclosures revealed how likely a consumer was to receive amounts above the minimum. Scripts used by telemarketers to solicit consumers did not clarify this information or reveal credit limits usually granted. In response to the representation by CCB's vice-president, Paul Seitz, that these problems had been corrected since June 2001, our review of the new disclosures found the correction to be embedded on the second page of the "Terms and Conditions of Offer," in the same typeface as the rest of the paragraph. Recognizing that respondents submitted the affidavit of Donald Whittaker, a private consultant who reviewed the terms of the solicitation from December 2001, categorizing the disclosure as "unsurpassed in the industry," we find Supreme Court to have correctly determined that neither of these proffers addressed the obvious problems associated with the initial solicitations. As to the later solicitations, they

still did not represent an accurate estimation of a consumer's credit limit; at all times, it appeared that the confusion was purposely fostered by respondents' telemarketers. As the allegations here "are based on deceptive business practices, not on deceptive contracts" (*Gaidon v Guardian Life Ins. Co. of Am.*, *supra* at 345), we agree that regardless of what the industry standards are for these disclosures, a reasonable consumer would be misled in believing that the "up to" amount boldly displayed on the solicitation letter was representative of a likely amount that a consumer would receive (*see Federal Trade Commn. v Febre*, 1996 WL 396117, *2, 1996 US Dist LEXIS 9487, *7-10 [ND Ill, July 3, 1996], *affd* 128 F3d 530 [1997]).

We further agree with Supreme Court that the information about the applicability of the CAP program in New York was deceptive. First, consumers could inadvertently enroll in the CAP program because its acceptance line was directly above the similarly looking acceptance line for the credit card. Second, the explanation regarding the benefits of the program, provided in a separate insert, described unemployment, family leave, life, dismemberment and disability benefits when only the life, dismemberment and disability benefits were available to New York consumers; that limitation was also embedded in the fine print of the benefit description. For these reasons, the solicitations were misleading as a matter of law (*see generally Federal Trade Commn. v Crescent Publ. Group, Inc.*, 129 F Supp 2d 311, 321 [2001]) because a reasonable consumer was led to believe that by signing up for the program, he or she would be protected in case of an income loss due to the conditions described.

Next addressing the practice of automatically enrolling consumers in the Applied Advantage Program for which they were charged an additional fee on their already-limited credit card, the practice was no more palatable simply because the consumers could discontinue it at any time.[2] The solicitation letters stated, in the middle of the letter, that "[b]y simply responding to our 'invitation' and also accepting membership in Applied Advantage, you will be granted a Visa Gold credit card." To opt out, consumers were required to check a box at the bottom of the letter to indicate that they did *not* want to be enrolled in the program; it was not clear that a credit card, albeit with limited credit, would still be issued if they declined such membership. Although the later solicitation letters did not men-

---

2. In later solicitations, membership was not automatic.

tion the Applied Advantage Program in the text of the initial solicitation, and instead provided a box on the bottom of the letter to indicate whether consumers wished to process the application with the Applied Advantage membership, the solicitations, as a whole, led consumers to believe that they had to participate in the costly program to achieve the credit desired. To the extent that respondents voluntarily discontinued automatic membership in such program, such voluntary discontinuance of fraudulent or deceptive practices will not bar the issuance of an injunction to prevent future practices (*see Federal Trade Commn. v Crescent Publ. Group, Inc., supra* at 320; *People v General Elec. Co.*, 302 AD2d 314, 316 [2003], *supra*).

■ We next reject respondents' contention that the federal Truth in Lending Act (*see* 15 USC § 1601 *et seq.*) preempted petitioner's claims because the allegations seek to establish that CCB's disclosures were inadequate—an area within the exclusive province of said Act. In our view, the allegations instead pertain to unfair or deceptive acts or practices which are illegal under state law. As such, they are not preempted (*see* 12 CFR part 226, Supp I, ¶ 28 [d] [1]; 12 CFR 226.28 [d]; *Therrien v Resource Fin. Group, Inc.*, 704 F Supp 322, 329 [1989]).[3]

■ Finally, considering the allegation that ACS engaged in improper debt collection practices pursuant to General Business Law article 29-H, the record reflects that despite an initial training emphasizing the parameters of the Debt Collection Procedures Act, the practice changed once actual collection practices commenced. ACS employees were encouraged to use aggressive and illegal practices, and evidence demonstrated that the salary of both the collector and the supervisor were determined by their success. Affidavits further established that ACS collectors used rude and obscene language with consumers, repeatedly called them even when requested not to do so, misrepresented their identities to gain access, and made unauthorized debits to consumer accounts. Petitioner presented approximately 203 complaints from consumers describing these practices and proffered affidavits from former employees, some supervisory, to confirm these allegations. While respondents submitted af-

---

3. This contention was not waived by respondents' failure to raise it as an affirmative defense in the answer (*see generally* CPLR 3018 [b]) since it was used as a defense in the summary judgment motion (*see Rogoff v San Juan Racing Assn.*, 77 AD2d 831, 832 [1980], *affd* 54 NY2d 883 [1981]). Nor do we find that prejudice enured to petitioner after we considered the affirmative defenses that were properly raised (*see Sheils v County of Fulton*, 14 AD3d 919, 921 [2005], *lv denied* 4 NY3d 711 [2005]).

fidavits of several current employees of ACS which either detailed their compliance practice or challenged other proof submitted by petitioner, Supreme Court properly concluded that these submissions were insufficient to create an issue of fact regarding the specific allegations made in the consumer complaints.

MERCURE, J.P., CREW III, CARPINELLO and KANE, JJ., concur.

Ordered that the order and judgment is affirmed, without costs.