[834 NYS2d 558]

In the Matter of THE PEOPLE OF THE STATE OF NEW YORK, by ELIOT SPITZER, as Attorney General, Appellant-Respondent, v APPLIED CARD SYSTEMS, INC., et al., Respondents-Appellants.

Third Department, April 5, 2007

### APPEARANCES OF COUNSEL

*Andrew M. Cuomo, Attorney General*, Albany (*Mark D. Fleischer* of counsel), for appellant-respondent.

*Arnold & Porter, L.L.P.*, New York City (*H. Peter Haveles Jr.* of counsel), for respondents-appellants.

### OPINION OF THE COURT

PETERS, J.

The relevant facts in this matter have been fully reviewed in a previous decision of this Court (27 AD3d 104 [2005], *lv dismissed* 7 NY3d 741 [2006]). Briefly, respondent Cross Country Bank, Inc. (hereinafter CCB) issues credit cards to consumers with poor credit scores who are otherwise unable to qualify for credit. Respondent Applied Card Systems, Inc. is the servicing agent for CCB and is involved in its collection activities. CCB's business practices were the subject of a national class action, *Allec v Cross Country Bank* (Cal Super Ct, Orange County, case No. 802894), in which a settlement was approved in September 2002. In April 2003, petitioner commenced this special proceeding, pursuant to CPLR 409 (b), alleging violations of Executive Law § 63 (12), General Business Law §§ 349 and 350, and General Business Law article 29-H. With some of the claims in the *Allec* litigation mirroring those involved here, respondents successfully moved for a dismissal of petitioner's claims for restitution on behalf of any New York consumer who was bound by the *Allec* settlement on the ground of res judicata. Thereafter, Supreme Court (Cannizzaro, J.) granted petitioner's motion for summary judgment on the issue of liability and issued a permanent injunction prohibiting respondents from engaging in fraudulent and deceptive business practices (*see* General Business Law § 349 [b]); that determination was affirmed by this Court (27 AD3d 104 [2005], *supra*). Petitioner thereafter applied for restitution, penalties and costs.[1]

Supreme Court (McNamara, J.) awarded restitution and assessed civil penalties and costs to petitioner. Inasmuch as the award of restitution failed to reimburse consumers bound by the *Allec* settlement, petitioner appeals. Respondents cross-appeal from the award of restitution and assessment of penalties.

■ The "doctrine of res judicata . . . holds that, as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action" (*Gramatan Home Invs. Corp. v Lopez*, 46 NY2d 481, 485 [1979]; *see McDonald v Lengel*, 2 AD3d 1182, 1183 [2003]). Since petitioner was not a party or participant in the *Allec* settlement, petitioner contends that he should not be considered to be in privity with those

---

1. Pursuant to Supreme Court's February 13, 2004 order, petitioner's application for restitution was limited to those consumers not bound by the *Allec* settlement.

consumers since his interests were not represented in that prior action (*see Green v Santa Fe Indus.*, 70 NY2d 244, 253 [1987]). Finding little guidance on the issue of whether an Attorney General may be barred by res judicata from seeking restitution on behalf of individual consumers, Supreme Court reviewed federal cases involving the Equal Employment Opportunity Commission (hereinafter EEOC). In *EEOC v Waffle House, Inc.* (534 US 279 [2002]), the EEOC filed an enforcement action against an employer on behalf of a former employee for violations of the Americans with Disabilities Act. It found that the EEOC was not barred from seeking individualized relief on behalf of an employee allegedly fired in violation of such act despite the fact that such employee was subject to a binding arbitration agreement with the defendant (*id.* at 298). It reasoned that "[t]o hold otherwise would undermine the detailed enforcement scheme created by Congress simply to give greater effect to an agreement between private parties that does not even contemplate the EEOC's statutory function" (*id.* at 296). The United States Supreme Court did, however, recognize that "[i]t is an open question whether a settlement or arbitration judgment would affect the validity of the EEOC's claim or the character of relief the EEOC may seek" (*id.* at 297). It further cited *Equal Empl. Opportunity Commn. v United States Steel Corp.* (921 F2d 489 [1990]) for the proposition that "individuals who litigated their own claims were precluded by res judicata from obtaining individual relief in a subsequent EEOC action based on the same claims" (*EEOC v Waffle House, Inc., supra* at 297).

Following *Waffle House*, the Seventh Circuit, in *Equal Empl. Opportunity Commn. v Sidley Austin LLP* (437 F3d 695 [2006], *cert denied* 549 US —, 127 S Ct 76 [2006]), stated that, had an employee "sued and lost, the employer might have been able to interpose the judgment as a bar to the EEOC's obtaining money for [that employee], by virtue of the doctrine of collateral estoppel" (*id.* at 696). Numerous courts thereafter have similarly distinguished claims for injunctive relief, where the regulatory body serves in a distinct, nonrepresentative capacity, and those for monetary damages on behalf of individuals who have already been compensated (*see Equal Empl. Opportunity Commn. v Jefferson Dental Clinics, PA*, 478 F3d 690, 699 [2007]; *Leon v IDX Sys. Corp.*, 464 F3d 951, 962 [2006]; *Chao v A-One Med. Servs., Inc.*, 346 F3d 908, 923 [2003], *cert denied* 541 US 1030 [2004]).

Recognizing petitioner's contrary view that individualized relief is intended to benefit both the injured party as well as the public in general (*see EEOC v Waffle House, Inc., supra* at 296; *see also United States v Sheff,* 194 F2d 596, 597 [1952]),[2] we must agree with Supreme Court that the cases cited by petitioner are not determinative on this issue (*see e.g. Equal Empl. Opportunity Commn. v Pemco Aeroplex, Inc.,* 383 F3d 1280 [2004], *cert denied* 546 US 811 [2005]; *Herman v South Carolina Natl. Bank,* 140 F3d 1413 [1998], *cert denied* 525 US 1140 [1999]).[3] Hence, as the focus here is solely for individualized relief on behalf of those New Yorkers bound by the *Allec* settlement, we agree that petitioner's "public interest does not justify giving the [New York consumers bound by the *Allec* settlement] two chances to receive make-whole relief" (*Equal Empl. Opportunity Commn. v Jefferson Dental Clinics, PA, supra* at 699).[4]

Next addressing the award of restitution, we find no merit to respondents' contention that petitioner failed to meet his initial burden as to causation and injury. As we previously noted (27 AD3d 104, 106 [2005], *supra*), petitioner successfully established his claims pursuant to General Business Law §§ 349 and 350 when he demonstrated that respondents engaged " 'in an act or practice that is deceptive or misleading in a material way and that [the consumer] has been injured by reason thereof' " (*Small v Lorillard Tobacco Co.,* 94 NY2d 43, 55 [1999], quoting *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank,* 85 NY2d 20, 25 [1995]). Having met the initial burden of establishing liability, Supreme Court was left to determine what measure of the injury "is attributable to respondents' deception" (*People*

---

**2.** Supreme Court fully acknowledged the distinct public purpose served by petitioner in his prosecution of these claims (*see* Executive Law § 63 [12]; General Business Law §§ 349, 350). Although restitution was precluded for those New York consumers bound by the *Allec* settlement, Supreme Court (Cannizzaro, J.) made it clear that petitioner was not barred from seeking an injunction, penalties or even a disgorgement fund on their behalf.

**3.** In fact, in *Equal Empl. Opportunity Commn. v Pemco Aeroplex, Inc.* (*supra*), the EEOC was found *not* to be in privity with the prior plaintiff "insofar as the relief the EEOC sought was not individual damages and reinstatement but rather an injunction against further violation" (383 F3d at 1293; *see Equal Empl. Opportunity Commn. v Harris Chernin, Inc.,* 10 F3d 1286, 1291 [1993]).

**4.** To be clear, petitioner may, in accordance with his statutory authority, prosecute claims not pursued in the previous class action and seek civil penalties against respondents for engaging in deceptive business practices during the period covered by the *Allec* settlement. Finally, as fully recognized by Supreme Court, petitioner was not barred from seeking injunctive relief.

*v Appel*, 258 AD2d 957, 958 [1999]). As that determination was relegated to its sound judicial discretion (*see State of New York v Princess Prestige Co.*, 42 NY2d 104, 108 [1977]; *see also People v General Elec. Co.*, 302 AD2d 314, 316-317 [2003]), we find no error in its exercise of such discretion, despite the lack of a hearing, given the extensive record and the court's thorough review thereof (*see State of New York v Princess Prestige Co.*, *supra* at 108).

Next addressing the award of restitution in the form of the origination and annual fees accrued by those consumers who went over limit in the first and second billing cycles, the determination was based upon a finding that these fees represent the cost of the credit product that these cardholders purchased but did not receive. Respondents were further ordered to reimburse these consumers for late and over-limit fees paid or accrued within the first two billing cycles and every billing cycle thereafter until the earlier of November 2004 or the absence of charged fees. While respondents contend that these early over-limit consumers should only be reimbursed for the initial over-limit fees since that is the only injury that could arguably be attributed to respondents' deception, we disagree. Consumers have been entitled to a full refund when they purchase a product or service which they do not ultimately receive or which cannot be used to the extent or for the purpose purchased (*see Matter of People v Telehublink Corp.*, 301 AD2d 1006, 1007 [2003]). However, a consumer is required to show some injury apart from and connected to that initial deception (*see Small v Lorillard Tobacco Co.*, *supra* at 56; *see also Federal Trade Commn. v Peoples Credit First, LLC*, 2005 WL 3468588, *8, 2005 US Dist LEXIS 38545, *30 [MD Fl 2005]; *Federal Trade Commn. v Figgie Intl., Inc.*, 994 F2d 595, 606 [1993], *cert denied* 510 US 1110 [1994]). Acknowledging that there may be some value in a credit card with a low limit which is subject to a large initial fee, these consumers acquired de minimis value in the credit card they received, when compared to the limit advertised. Moreover, they incurred substantial charges in connection with that deception. In finding the underpinnings of the award supported by record evidence (*see Federal Trade Commn. v Figgie Intl., Inc.*, *supra* at 606), it will remain undisturbed.

As to the award to those consumers who enrolled in the Credit Account Protection (hereinafter CAP) program, we note that despite the initial deception associated with the solicitation of those consumers, they did receive an insurance certificate which

disclosed the terms of their policy and the option to cancel the insurance within 15 days. With no finding that these consumers paid an inflated fee for benefits that they did not actually receive, and with the premiums previously approved by the Insurance Department, we fail to find the requisite showing of injury related to the deception (*see Small v Lorillard Tobacco Co., supra* at 56).

Finally, addressing those consumers who participated in a repayment plan whereby their accounts were "re-aged," yet became delinquent in the first billing cycle after re-aging, petitioner sought a refund or credit of the late and over-limit fees that were assessed.[5] Petitioner alleged that these consumers were led to believe that after making this payment, no further late and over-limit fees would be assessed. While the late fees were, in fact, eliminated, over-limit fees continued if the accounts were not brought under the credit limit by the following billing cycle. Supreme Court acknowledged that respondents had the right to charge over-limit fees where an account balance exceeded the consumer's available credit, but awarded restitution due to respondents' deceptive solicitation about the re-aging process. Here, again, we must agree with respondents that there is no basis to support the theory that the re-aging process caused the consumer to incur additional over-limit fees.

■ As to penalties, General Business Law § 350-d provides that any corporation, its agent or employee that violates General Business Law article 22-A shall be liable for a civil penalty not to exceed $500 per violation. Giving broad discretion to Supreme Court to determine an appropriate penalty so long as its choice is explained and "it is not disproportionate to the offense" (*Tatta v State of New York*, 20 AD3d 825, 826 [2005], *lv denied* 5 NY3d 716 [2005]), we find that for each of the specific penalties challenged on appeal, relevant factors were considered and a sufficient explanation was provided (*see United States v Reader's Digest Assn., Inc.*, 662 F2d 955, 967 [1981], *cert denied* 455 US 908 [1982]; *compare People ex rel. Higgins v Peranzo*, 179 AD2d 871, 874-875 [1992]). More often than not, Supreme Court imposed penalties lower than those proposed by petitioner. It keenly considered CCB's profitability and found that it had the ability to pay penalties which would not be destructive of its business (*see Matter of Sarco Indus. v Angello*, 23 AD3d 715, 717 [2005]). While it did impose a $500 penalty with respect to

---

5. Re-aging is a process whereby, after making a certain payment, a consumer's account is brought current to avoid further late fees.

respondents' misrepresentation of payoff amounts in connection with the re-aging of consumers' accounts, Supreme Court justified that penalty by finding the practice "particularly abhorrent" (*see* General Business Law § 350-d).

CARDONA, P.J., SPAIN, CARPINELLO and KANE, JJ., concur.

Ordered that the order is modified, on the law and the facts, without costs, by reversing so much thereof as awarded restitution to consumers who enrolled in the Credit Account Protection program and whose accounts were re-aged, and, as so modified, affirmed.