Matter of People of the State of N.Y. v Orbital Publ. Group, Inc. (2019 NY Slip Op 01329)





Matter of People of the State of N.Y. v Orbital Publ. Group, Inc.


2019 NY Slip Op 01329


Decided on February 21, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 21, 2019

Friedman, J.P., Gische, Kapnick, Gesmer, Kern, JJ.


451187/15 8482 8481

[*1]In re People of the State of New York, by Eric T. Schneiderman, Attorney General of the State of New York, Petitioner-Appellant,
v
Orbital Publishing Group, Inc., et al., Respondents-Respondents, Laura Lovrien, Respondent.


Eric T. Schneiderman, Attorney General, New York (Seth Rokosky of counsel), for appellant.
Lennon & Klein, P.C., New York (David P. Lennon of counsel), for respondents.



Order, Supreme Court, New York County (Carol R. Edmead, J.), entered December 1, 2015, which, insofar as appealed from as limited by the briefs, denied petitioner's request for a summary determination that respondents violated General Business Law §§ 349 and 350, unanimously reversed, on the law, with costs, and the request granted. Order, same court and Justice, entered June 20, 2016, which, insofar as appealed from as limited by the briefs, denied petitioner's request for a summary determination that respondents violated Executive Law § 63(12), unanimously reversed, on the law, with costs, and the request granted.
Contrary to Supreme Court, we conclude as a matter of law that solicitations for newspaper and magazine subscriptions promulgated by respondents are materially misleading (see Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 324 and n 1 [2002]; People v General Elec. Co., 302 AD2d 314, 315 [1st Dept 2003]; see generally General Business Law §§ 349; 350; Executive Law § 63[12]). The solicitations implied that they were sent directly from the publishers or their authorized agents and offered their lowest available rates. However, the record demonstrates that respondents had at best indirect relationships with publishers (some of whom expressly forbade respondents to sell their publications) and offered rates well above the standard subscription prices.
The voluntary removal by respondents of some of the challenged language from the solicitations shortly before this proceeding was commenced does not prevent a finding of liability for the years when the language was in place or the issuance of an injunction to prevent re-inclusion of the language in the future (see Matter of People v Applied Card Sys., Inc., 27 AD3d 104, 109 [3d Dept 2005], lv dismissed 7 NY3d 741 [2006]).
Nor does it avail respondents that a version of the solicitations was "approved" by the Oregon Department of Justice in 2004. The Oregon determination is not binding on New York courts, the Oregon settlement expressly provided that it did "not constitute approval for past, present or future business practices," the solicitations at issue do not even comply with the "approved" solicitation, and Oregon later brought a new enforcement action against respondents based on the solicitations at issue.
The disclaimer on the back of the solicitations is insufficiently prominent or clear to negate the overall misleading impression that consumers are being offered standard publisher rates (see Federal Trade Commn. v Direct Mktg. Concepts, Inc., 624 F3d 1, 12 [1st Cir 2010]; Federal Trade Commn. v Cyberspace.com, LLC, 453 F3d 1196, 1200 [9th Cir 2006]; see [*2]also Applied Card, 27 AD3d at 107-108). The disclaimer appears on the back of the solicitation, is not referenced on the front, and consists of two dense paragraphs of block text all in the same typeface, making it unlikely to be read by consumers. In addition, the disclaimer either does not address or directly contradicts several claims made on the front of the solicitation, and its use of the term "agent" implies a closer relationship with the publishers than respondents actually have.
Even if, as respondents argue, express publisher authorization was not necessary for them to sell subscriptions, the solicitations were still misleading insofar as they purported to be so authorized. This misrepresentation is also material insofar as publisher authorization implies some regulation of the rates charged.
Respondent Lydia Pugsley may be held individually liable, because the record demonstrates that she owned and operated respondent Adept Management, Inc., which performed "consulting" services for the respondent subscription agents, and that she had "actual knowledge" of the language of the solicitations and the ways in which it was likely to be misleading (see People v Apple Health & Sports Clubs, 206 AD2d 266, 267 [1st Dept 1994], lv dismissed in part, denied in denied 84 NY2d 1004 [1994]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: FEBRUARY 21, 2019
CLERK