Matter of City of Troy v Freedom Mtge. Corp. (2024 NY Slip Op 00104)

Matter of City of Troy v Freedom Mtge. Corp.

2024 NY Slip Op 00104

Decided on January 11, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 11, 2024

536057
[*1]In the Matter of City of Troy, Appellant,
v
Freedom Mortgage Corporation, Respondent, et al., Respondent.

Calendar Date:November 16, 2023

Before:Egan Jr., J.P., Clark, Aarons, Ceresia and Mackey, JJ.

Whiteman Osterman & Hanna LLP, Albany (Thomas A. Shepardson of counsel), for appellant.
Dinsmore & Shohl LLP, Louisville, Kentucky (Sarah S. Mattingly of counsel, admitted pro hac vice) and Gerber Ciano Kelly Brady LLP, Albany (David P. Johnson of counsel), for Freedom Mortgage Corporation, respondent.

Egan Jr., J.P.
Appeal from an order of the Supreme Court (Henry F. Zwack, J.), entered August 10, 2022 in Rensselaer County, which dismissed petitioner's application, in a proceeding pursuant to RPAPL article 13, to, among other things, find respondents in violation of RPAPL 1308.
Pursuant to an assignment of mortgage recorded in November 2020, respondent Freedom Mortgage Corporation became the first lien mortgage holder for a residential property at 429 10th Street in the City of Troy, Rensselaer County (hereinafter the subject property) that was the subject of a pending foreclosure action. Freedom complied with its obligation under RPAPL 1310 to advise the Department of Financial Services that the subject property was "vacant and abandoned" in February 2021 (RPAPL 1310 [2]). Petitioner's code enforcement officer thereafter inspected the subject property and, in a June 2021 letter to Freedom and its loan servicer, respondent Mortgage Contracting Services, LLC, agreed that the subject property was vacant and abandoned and directed them to address a variety of conditions that, in his view, reflected that they had failed to inspect, secure and maintain it as required by RPAPL 1308.
In August 2021, after a re-inspection by the code enforcement officer found that respondents had not cured the conditions at the subject property cited in his letter, petitioner commenced this proceeding seeking, among other things, an order directing respondents to satisfy their obligations under RPAPL 1308 and the assessment of a civil penalty (see RPAPL 1308 [8] [c]). Respondents answered and, annexing various affidavits and documentary evidence, argued that they had satisfied their obligations. Petitioner provided proof in reply that disputed respondents' representations and detailed how they had continued to fail to meet their obligations under RPAPL 1308 after the commencement of this proceeding. Respondents, in turn, offered a surreply affidavit describing how they were attempting to bring the pending foreclosure action to a conclusion and annexing evidence indicating that, notwithstanding the claims in petitioner's reply papers, they were making diligent attempts to maintain the property. Supreme Court thereafter issued an order in which it dismissed the petition despite finding that respondents had left the property "unsecured and unmaintained" for some period of time. Supreme Court determined, in particular, that a penalty under RPAPL 1308 was not warranted because they had devoted a significant amount of money and effort to cleaning up, maintaining and securing the subject property from October 2021 onward and had essentially brought "the subject property into compliance" with RPAPL article 13. Petitioner appeals.
Initially, petitioner advises us that, in December 2022, the subject property was sold at a foreclosure sale to a third party. Respondents are, as a consequence, no longer subject to the maintenance obligations of RPAPL 1308 (see RPAPL 1308 [6]). Accordingly, to [*2]the extent that petitioner now challenges the dismissal of that part of the petition seeking a directive that respondents comply with those obligations — and raises questions as to what the extent of those obligations are — "the rights of the parties will [no longer] be directly affected by the determination of the appeal" in that regard (Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714 [1980]). As that challenge is moot as a consequence, we limit our discussion to the issue of whether Supreme Court abused its discretion in declining to assess a monetary penalty against respondents. We are satisfied that it did not, and, as a result, affirm.
Briefly, RPAPL 1308 was enacted in 2016 to, in relevant part, impose obligations upon the holder of a delinquent first mortgage on certain residential real properties and require the servicer of such a mortgage to "secure and maintain the residential real property pursuant to [RPAPL 1308 (3), (4), (5), (6) and (7)] where the servicer has a reasonable basis to believe that the residential real property is vacant and abandoned . . . and is not otherwise restricted from accessing the property" (RPAPL 1308 [2], as added by L 2016, ch 73, pt Q, § 1; see RPAPL 1309 [2]). The statute sets forth procedures for determining whether a "property is vacant and abandoned" (RPAPL 1308 [2], [4]; 1309 [2]); once the determination is made that it is, the servicer is required to take a variety of actions, including securing any broken doors and windows, winterizing the plumbing and heating systems at the property if necessary, "remov[ing] and remediat[ing] any significant health and safety issues, including outstanding code violations," and taking reasonable steps to prevent dangerous mold growth (RPAPL 1308 [4]). The servicer thereafter has continuing obligation to "take reasonable and necessary actions to maintain the property until" one of several specified events occurs, including the return of an occupant to the property, the assignment of the mortgage to another servicer, or the sale and transfer of the property to a new owner (RPAPL 1308 [6]). "Reasonable and necessary actions . . . include, but are not limited to," keeping the property secure and maintaining it "in a manner consistent with the standards set forth" in specified sections of the Property Maintenance Code of New York State so long as the necessary permits or approvals for that maintenance work can be obtained (RPAPL 1308 [7]).
RPAPL 1308 contemplates that its provisions may be enforced in a variety of ways, including in an application for judicial relief by the municipality in which the vacant and abandoned property is located (see RPAPL 1308 [8] [c]). The municipality may obtain that relief if it demonstrates to the court by "the preponderance of the evidence . . . that the mortgagee or agent of a mortgagee . . . violated" RPAPL 1308 (RPAPL 1308 [8] [a]). If the municipality satisfies that burden, "a civil penalty may be issued by . . . the court in the [*3]amount of up to [$500] per day per property for each day the violation persisted" (RPAPL 1308 [8] [a]; see RPAPL 1308 [8] [c]). We read the permissive verb "may" in that provision, particularly given the failure of the Legislature to fix a minimum amount for any penalty, to mean that the court is vested with "the discretionary authority to order [a penalty] where appropriate" if a violation of RPAPL 1308 occurred (Matter of New Rochelle Water Co. v Public Serv. Commn. of State of N.Y., 31 NY2d 397, 404 [1972]; see McKinney's Cons Laws of NY, Book 1, Statutes § 177; see e.g. Matter of Planning Bd. of Town of N. Elba v Zoning Bd. of Appeals of Town of N. Elba, 75 AD2d 686, 687 [3d Dept 1980]). "[T]his broad discretion includes the power to impose no penalty at all for a violation if the facts and circumstances justify such a result" (People ex rel. Higgins v Peranzo, 179 AD2d 871, 874 [3d Dept 1992]), and we will not disturb a penalty determination "so long as the court explains its choice and it is not disproportionate to the offense" (Tatta v State of New York, 20 AD3d 825, 826 [3d Dept 2005], lv denied 5 NY3d 716 [2005]).
Here, the record shows that respondents failed to satisfy their obligations under RPAPL 1308 for a significant period of time after reporting that the subject property was vacant and abandoned in February 2021. The code enforcement officer's June 2021 notice, and the photographic evidence from his inspection of the subject property that month, reflected that the subject property had overgrown vegetation and that the residence had structural problems. Most notable, however, was the fact that the residence was not secure despite having been boarded up by respondents and that people could and did enter it, resulting in an accumulation of garbage, beer cans and used hypodermic needles both inside and outside of the unoccupied residence. A re-inspection, conducted in July 2021, found that many of those violations remained. Respondents provided a variety of evidence showing that they had attempted to secure and maintain the subject property during this period and, indeed, that they and their predecessors in interest had expended $23,579.48 to maintain the subject property through July 2021. Those maintenance efforts included repeatedly installing and/or repairing door locks and boarding windows, clearing snow, mowing the lawn, removing overgrown vegetation, and removing garbage and other debris from the exterior.
Nevertheless, although respondents were clearly attempting to secure and maintain the subject property during this period, their own work orders reflected that squatters had entered and were living in the residence by October 2021 and that the area "smell[ed] of meth and human waste." Petitioner's reply papers further reflected that respondents were making efforts to remediate some of the problems at the subject property, but that they were not in compliance with RPAPL 1308 at the time this proceeding was commenced and remained [*4]out of compliance as of June 2022. For instance, the code enforcement officer averred how he re-inspected the subject property in May 2022 and found garbage and drug paraphernalia strewn around the premises and uncorrected structural problems with the residence. He added that individuals could still enter the residence through a broken basement window and a previously secured back door that had been pried open, and that there was "considerable garbage and waste" in the interior to accompany the "incredible stench emanating from" the subject property. As Supreme Court concluded from the foregoing, while respondents may not have "continuously neglected" the subject property, they did leave it "unsecured and unmaintained" for some period of time before June 2022 in violation of RPAPL 1308.
That said, respondents were also indisputably making efforts to care for the subject property both before and after June 2022, and they submitted surreply papers showing that they had spent an additional $17,770 between October 2021 and June 2022 to both continue the maintenance work they had already been performing at the subject property and take additional "extraordinary measures to secure [the subject property] against vandals and squatters."[FN1] They noted that they had taken the unusual step of installing steel doors and window barriers to prevent people from entering the residence at the subject property and that, while they did not have the subject property under constant surveillance, they regularly inspected the property to determine if squatters were present and took remedial action whenever necessary. Respondents added that they were actively trying to bring the foreclosure process to its conclusion and find a new owner for the subject property, explaining how they were engaging in motion practice to substitute a new referee in place of one who had retired during the COVID-19 pandemic. Respondents also made clear that the monies they had spent to maintain the subject property "far exceed[ed] what is traditionally spent on a property in foreclosure" and that they were unlikely to recover the approximately $44,000 that had been spent to maintain and secure the subject property at a foreclosure sale because the amount of their foreclosure judgment, $61,155.79, was roughly the value of the subject property itself.
In short, although the record reflects that respondents' care of the subject property was not flawless, it also leaves no doubt that they were making significant efforts to maintain and secure the subject property during the period that it was vacant and abandoned, that they stepped up those efforts in response to petitioner's complaints, and that they would almost certainly lose tens of thousands of dollars for their trouble. Supreme Court cited those facts in concluding that the assessment of a monetary penalty, in addition to the significant costs respondents had already incurred, would be inequitable and unwarranted. Suffice it to say, we perceive [*5]no abuse of discretion in that determination (see e.g. State of New York v Town of Wallkill, 170 AD2d 8, 12 [3d Dept 1991]).
Clark, Aarons, Ceresia and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Petitioner complains that this evidence was improperly submitted in surreply and that Supreme Court should not have considered it; however, respondents were themselves responding to new evidence in petitioner's reply papers that exceeded the scope of the original petition, and petitioner notably failed to request an opportunity to provide any additional proof after receiving respondents' surreply papers. As such, we perceive nothing improper in Supreme Court affording respondents with "a full opportunity to respond to, and submit further evidence addressing, [petitioner's reply] submissions" (U.S. Bank Trust, N.A. v Rudick, 156 AD3d 841, 842 [2d Dept 2017]; see Matter of Dusch v Erie County Med. Ctr., 184 AD3d 1168, 1170 [4th Dept 2020]; Bayly v Broomfield, 93 AD3d 909, 910-911 [3d Dept 2012]).