OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 This appeal by two union funds from dismissal of their action against a bank focuses on the meaning of the phrase "[deceptive acts and practices” as used in General Business
 
 *23
 
 Law § 349. We conclude that there are questions of fact as to whether the bank’s acts constituted conduct prohibited by the statute.
 

 According to the undisputed facts, plaintiffs Pension Fund and Welfare Fund are not-for-profit associations that administer pension benefits and health insurance for union members and their beneficiaries. Both Funds had dealt with defendant Marine Midland Bank since the 1960’s, when the Bank became their corporate trustee, and since at least 1973 the Bank had been investment advisor for the Welfare Fund.
 

 On May 19, 1976, Robert Bradshaw, administrator of both Funds, met with Bruce Whitney, Marine’s vice-president and branch manager of the East Side Oswego office. Whitney had attended meetings of the Funds’ trustees and was known to Bradshaw. Bradshaw told Whitney that he wanted to open an interest-bearing savings account for the Pension Fund, which at the time had moneys in non-interest-bearing checking accounts at Marine.
 

 Marine offered two types of savings accounts — one for individuals, another for commercial entities. For commercial entities, Federal Regulation Q (12 CFR 217
 
 et seq.)
 
 capped the principal upon which interest could be paid — a maximum of $100,000 through 1979, and a maximum of $150,000 thereafter. Not-for-profit entities were exempt from this regulation. To effectuate its own compliance with Regulation Q, Marine used blue signature cards for for-profit commercial customers and green cards for nonprofit commercial entities. In opening the savings account for the Pension Fund with an initial deposit of $10,000, Whitney without explanation gave Bradshaw a blue signature card. Although the card was designated "Commercial Savings,” it did not indicate that it was for profit-oriented entities, nor did it reveal that interest would not be paid on deposits in excess of $100,000.
 

 The signature card stated that the account was subject to the Bank Rules Governing Commercial Savings Deposits with Marine Midland Bank. These rules, which were not printed on the signature card itself, governed "every savings deposit * * * by a corporation, partnership or other association operated for profit * * * or by the United States, any State or any county, municipality or political subdivision thereof.” The Bank rules continued:
 

 "d. Applicable to commercial Depositors only and not to governmental-unit Depositors: Under Fed
 
 *24
 
 eral regulations, the amount of Depositor’s Savings Deposit or Deposits with Bank may not exceed $100,000. Accordingly, no interest will be earned on any amount in Depositor’s Deposit account or accounts in excess of $100,000, and such excess amount shall be deemed to be a demand deposit.”
 

 Nearly a year later, in March 1977, Bradshaw, this time acting for the Welfare Fund, opened a second savings account with Marine. Again, Whitney provided him with a blue, for-profit account, signature card. In total, four of the Funds’ trustees executed blue signature cards for the two accounts. The parties differ as to whether Bradshaw was furnished a copy of the Bank rules in connection with the opening of either account.
 

 Roughly seven years after the accounts were opened, in January 1984, Whitney advised the Funds that Marine had not been paying interest on principal in either account exceeding the cap, which allegedly resulted in lost interest of $30,060.26. Plaintiffs commenced this action against the Bank for the lost interest, claiming in their single cause of action that the Bank’s actions were deceptive acts and practices within General Business Law § 349 (a). Defendant moved and plaintiffs cross-moved for summary judgment. Supreme Court granted defendant’s motion for summary judgment, stating in its order that the "conduct complained of does not, as a matter of law, rise to the level of a deceptive business practice within the meaning of Section 349 (a) of the General Business Law,” and the Appellate Division affirmed. We now modify the order to deny defendant’s summary judgment motion.
 

 Section 349 (a) of the General Business Law declares as unlawful "[deceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state,” with no further elaboration of the prohibited conduct. As enacted in 1970, the statute entrusted sole enforcement power to the Attorney-General. A decade later, the Legislature added a private right of action for "any person who has been injured by reason of any violation of this section,” allowing injunctive relief and damages, as well as reasonable attorney’s fees (General Business Law § 349 [h]; see
 
 also,
 
 Note,
 
 New York Creates a Private Right of Action to Combat Consumer Fraud: Caveat Venditor,
 
 48 Brook L Rev 509).
 

 As shown by its language and background, section 349 is directed at wrongs against the consuming public. General
 
 *25
 
 Business Law article 22-A, of which section 349 is a part, is entitled “Consumer Protection from Deceptive Acts and Practices.” The structure of the law, with the Attorney-General initially wielding sole enforcement power in the name of the State, speaks to its public focus. Finally, the Governor’s Memorandum approving the bill (L 1970, ch 43) lauds its consumer-protective purpose:
 

 “Consumers have the right to an honest market place where trust prevails between buyer and seller. The power to obtain injunctions against any and all deceptive and fraudulent practices will be an important new weapon in New York State’s long standing efforts to protect people from consumer frauds” (Mem of Governor Rockefeller, 1970 NY Legis Ann, at 472).
 

 Thus, as a threshold matter, plaintiffs claiming the benefit of section 349 — whether individuals or entities such as the plaintiffs now before us — must charge conduct of the defendant that is consumer-oriented.
 

 Consumer-oriented conduct does not require a repetition or pattern of deceptive behavior. The statute itself does not require recurring conduct. Moreover, the legislative history makes plain that this law was intended to “afford a practical means of halting consumer frauds at their incipiency without the necessity to wait for the development of persistent frauds”
 
 (see,
 
 Mem of Governor Rockefeller, 1970 NY Legis Ann, at 472-473). Plaintiff, thus, need not show that the defendant committed the complained-of acts repeatedly — either to the same plaintiff or to other consumers — but instead must demonstrate that the acts or practices have a broader impact on consumers at large. Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute
 
 (see, e.g., Genesco Entertainment v Koch,
 
 593 F Supp 743, 752 [negotiation for rental of Shea Stadium was a " 'single shot transaction’ ”, not a typical consumer transaction and therefore not covered by section 349]).
 

 Proof that defendant’s acts are directed to consumers, however, does not end the inquiry. A prima facie case requires as well a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof
 
 (Varela v Investors Ins. Holding Corp.,
 
 81 NY2d 958, 961; Givens, Prac
 
 *26
 
 tice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law § 349, at 565). Although it is not necessary under the statute that a plaintiff establish the defendant’s intent to defraud or mislead, proof of scienter permits the court to treble the damages up to $1,000 (General Business Law § 349 [h]). By the same token, while the statute does not require proof of justifiable reliance, a plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm.
 

 In explicating the legislative objective behind section 349, we are mindful of the potential for a tidal wave of litigation against businesses that was not intended by the Legislature. That possibility is avoided — while furthering the statutory purposes — by our adoption of an objective definition of deceptive acts and practices, whether representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances. Such a test, which may be determined as a matter of law or fact (as individual cases require), complements the definition applied by the Federal Trade Commission to its antifraud provision (15 USC § 45) upon which the New York statute is modeled (Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law § 349, at 565; Note,
 
 op. cit.,
 
 48 Brook L Rev 509, 520).
 

 In the case of omissions in particular — the subject of the present case — the statute surely does not require businesses to ascertain consumers’ individual needs and guarantee that each consumer has all relevant information specific to its situation. The scenario is quite different, however, where the business alone possesses material information that is relevant to the consumer and fails to provide this information.
 

 Applying these principles to the case at hand, we first conclude that the acts of defendant fall within the "consumer-oriented” ambit of General Business Law § 349. The record indicates that defendant Bank dealt with plaintiffs’ representative as any customer entering the bank to open a savings account, furnishing the Funds with standard documents presented to customers upon the opening of accounts. The account openings were not unique to these two parties, nor were they private in nature or a " 'single shot transaction’ ”
 
 (Genesco,
 
 593 F Supp 743, 752,
 
 supra).
 
 Thus, plaintiffs have satisfied the threshold test in that the acts they complain of
 
 *27
 
 are consumer-oriented in the sense that they potentially affect similarly situated consumers.
 

 The record is, however, inconclusive as to whether a reasonable consumer in plaintiffs’ circumstances might have been misled by the Bank’s conduct. The parties differ as to whether Bradshaw was given the Bank rules or other documentation that would have informed the Funds about the limitation on interest for their accounts. It is also disputed whether the Bank rules themselves convey the information regarding the different treatment of profit and nonprofit entities. Thus, the Bank’s liability under the statute will depend, in part, on whether plaintiffs possessed or could reasonably have obtained the relevant information they now claim the Bank failed to provide.
 

 Accordingly, the order of the Appellate Division should be modified, without costs, by denying defendant’s motion for summary judgment and, as so modified, affirmed.
 

 Judges Simons, Titone, Bellacosa, Levine and Ciparick concur; Judge Smith taking no part.
 

 Order modified, etc.