Dunn v Northgate Ford (2004 NY Slip Op 50030(U))

[*1]

Dunn v Northgate Ford

2004 NY Slip Op 50030(U)

Decided on January 7, 2004

Supreme Court, Broome County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 7, 2004

Supreme Court, Broome County
 MARGARET DUNN, Plaintiff,
against
NORTHGATE FORD, INC., and MARK POWELL, and ARTHUR ALLEN, III, Defendants.
Index No. 2003-0179

Thomas A. Vitanza, Esq.
Vitanza, Shabus & Fertig, LLP
Attorney for Plaintiffs
15 Maple Street
Norwich, NY 13815
Matthew C. Butler, Esq.
Butler & Butler, P.C.
Attorney for Defendants
231-241 Main Street
Vestal, NY 13850

WALTER J. RELIHAN, JR., J.
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BROOME
NICOLE ELLSWORTH,
Plaintiff,Index No. 2003-0180
RJI No. 2003-0782-J
v
against
NORTHGATE FORD, INC.,
Defendant.
Broome County Motion Term December 22, 2003
DECISION
Nicole Ellsworth alleges that she sought a loan to purchase a car and that the car dealer's representative, Arthur Allen III, did not record her statement that she was paying rent to her parents of $200 a month. The finance form completed by the dealer, and submitted to the lender, showed "zero" for rent/mortgage. She also alleges that she told the dealer that she was a high school student who would be leaving full time employment soon to return to school for the fall term and that the salary she was then earning represented summer employment only. The form completed by the dealer showed only that her income was $290 a week. Her pay stubs substantially confirmed that figure. However, the form does not include the fact that this income was derived from a summer employment which would soon cease as she returned to school.
An affidavit submitted by a retired consumer loan official, William Slote, opines that a true reflection of plaintiff's income and expenses would show a debt-income ratio of 73%, whereas the figures used in the form prepared by the dealer show only a 35% ratio of debt to income. A true representation, the deponent claims, would have resulted in a rejection of the loan and the sale would have been forestalled.
In the event, the loan was approved and the plaintiff paid the loan installments from September 2000 to April 2001 when she sold the vehicle to another dealer for $12,000. The original purchase price was about $17,000. This resulted in an obligation of $5,000 to the defendant dealer's finance agency in order to satisfy the purchase loan.
The plaintiff claims that the application information given to the finance agency by the dealer was false, knowingly so, and resulted in a loan, and sale, which the lender would not have granted if the true facts regarding the plaintiff's financial condition had been reported. In consequence, she contends, her shortfall of $5,000, some seven or eight months later, would not have occurred.
In a second action, Margaret Dunn alleges that the same representative of the same dealer also submitted false information to the finance agency regarding her income and expenses. The application recites that her annual income was $29,500 plus $6,000 in child support and that her monthly rent was $250. These representations, plaintiff contends, were knowingly false and induced a loan which she could not repay, resulting in a default, a repossession and a deficiency obligation of $12,309.58. The annual income figures given to Mr. Allen, she claims, were actually $13,000, not $29,500. She contends that she told Allen that her rental cost was $350 per month, not $250. She also denies that she received any child support at the time of her application for a loan in December 1999 and denies that she ever mentioned anything to him about child support. Slote submitted a similar affidavit in support of the Dunn claim.
Defendants argue that, even if the allegations of the Ellsworth and Dunn complaints are true, any misrepresentations were made by the dealer to the lenders, which are not parties to these actions, and not to plaintiffs who, therefore, have no standing to assert fraud claims against the dealer. In effect, the defendants argue, plaintiffs seek relief against the dealer for the consequences of their own folly in purchasing goods which they could not afford. Plaintiffs respond that their innocence was misused by the dealer, whose guile led them to suffer economic losses which would not have occurred in the absence of the dealer's misrepresentations to the lenders.
Does the law afford a remedy to those who sign documents intended to induce a lender to [*2]provide them with the purchase money needed to satisfy their desires, but who then contend that their inability to repay the loan should be blamed upon false information contained in the very documents they have signed? Clearly, the law would allow no relief to plaintiffs who had participated in such misrepresentations. Here, however, the complaints depict the plaintiffs as wholly ignorant of the false data supplied to the lenders, though both Ellsworth and Dunn signed the finance form which recites that the signers had read and understood the contents.
The fraud, if fraud it was, was perpetrated upon the lenders. It achieved the plaintiffs' purposes in obtaining the loan and the cars they desired and used for their own convenience and pleasure for many weeks and months. Moreover, the loan application was shown to each plaintiff who signed it without reading it. There is no allegation that Allen overtly misrepresented to them anything in the document in order to extract their signature (cf. Angerosa v The White Company, 248 App Div 425). Both plaintiffs gave deposition testimony that they were not prevented from reading the documents.
The rule in New York is well settled. Plaintiffs are presumptively bound by the content of their unread applications. A promisor may not avoid a contract, duly signed, by a claim that reliance was placed upon a contrary oral representation (i.e. that the installment payments would be less than stated in the writing) where no artifice was employed to prevent the promisor from reading the document and no false representation induced the promisor to rely upon the defendants' salesman and, in consequence, to blindly sign the document in question (Pimpinello v Swift & Co., 253 NY 159; Lewin Chevrolet-Geo Oldsmobile, Inc. v Bender, 225 AD2d 916). The plaintiffs have offered no facts which would justify a different result and their fraud causes of action must be dismissed.
Section 349 of the General Business Law, however, creates an additional remedy for business practices which are deceptive or misleading in a material way and which cause injury to a consumer. The subtle but important distinctions between the broader remedy provided by section 349 and the narrow requirements of the common law fraud action are explicated in Stutman v Chemical Bank, 95 NY2d 24.
Unlike the common law action for fraud or fraudulent inducement (see section 538(2)(a), Restatement, Second, of Torts), section 349 of the General Business Law, on its face, does not require a consumers' justifiable reliance upon a fraudulent misrepresentation. The text of the statute seems to suggest that a plaintiff need prove only a causal connection between a consumer-oriented material misrepresentation and an economic loss.
However, in Oswego Laborers' Local 214 v Marine Midland Bank, 85 NY2d 20, the Court of Appeals recognized that the language of section 349 is sufficiently vague to permit a "tidal wave" of claims (see p 26) which the Legislature could not have intended. Accordingly, the court adopted a limitation upon the nature of the deceptive acts or omissions covered by the statute. Deceptive omissions, the Court declared, must be such as would mislead a reasonable consumer acting reasonably under the circumstances. Hence, while justifiable reliance does not appear in the text of section 349, it is now clear that a consumer must nevertheless act reasonably under all the circumstances.
Private contract disputes do not fall within the reach of the statute. However, there is evidence from other affiants that similar omissions and/or misstatements of fact, known to the dealer to be false or misleading, and important to the lender, occurred in other sales at the same [*3]dealership. This evidence, if offered at trial, would tend to show that such practices are not isolated instances and would have a "broader impact on consumers at large" (Oswego Laborers' Local 214, supra, at p 25). We assume, arguendo, that the plaintiffs' claims meet the requirements of section 349 in that respect. The plaintiffs next contend that the mere fact that they were not themselves misled does not invalidate the argument that defendants' deceptive and misleading representations to others, in which plaintiffs were not complicit, were the direct cause of an economic injury visited upon plaintiffs when the loans could not be managed and the vehicles had to be sold at a loss.
A jury could find that Nicole Ellsworth, a high school student at the time, may have been misled by an apparently knowledgeable salesman and, consequently, acted reasonably given her youth and limited experience. She may be able to prove that she suffered an injury by receiving a loan that she could not be expected to repay and that deceptive information, invented by the defendants, was the efficient cause of an economic injury, though she paid the installments and used the car for some seven months.
Margaret Dunn, by contrast, was an adult and had some knowledge of practical affairs, including the purchase of automobiles on credit. Dunn purchased her used car on December 22, 1999. The closing documents she signed included an accurate statement of the purchase price of $17,995 and an accurate statement of the monthly installment payments of $433.04. Dunn concedes that she made as many as 9 or 10 installment payments of $443, the sum appearing on her loan application filled out by Allen and signed by her (Deposition of 10 June 2003 at pp 26-27). In a different sworn statement, she says that she made 6 or 8 payments of $443 (Affidavit of 19 September 2003). She now claims, however, that at the time of the sale she was told by defendant's salesman that the payments would be only $320. She has no documentary evidence which shows any installment payment other than the $433.04 which appears on the loan application which she signed.
Dunn contends that the figures shown on the loan application, reporting her income and expenses, were materially false but fails to submit any verifiable statement of her actual income at the time the loan application was signed which could be compared with the income figure which defendants' salesman entered on the loan form. The court, for example, was not given a copy of plaintiff's tax return for the year 1999, though defense counsel asked for that document at the Dunn deposition of June 10, 2003.
At some point in late 2000, perhaps September, she went to the bank, told them she had cancer, was out of work and could not continue to amortize the loan. An unfortunate change of circumstance many months after the conclusion of a loan agreement, which makes repayment more onerous, is not uncommon but is not within the protective reach of the statute. Any different result would release the unintended "tidal wave" of which the Court of Appeals has warned (Oswego Laborers' Local 214 Pension Fund, supra, at p 26) and defeat the reasonable expectations of buyers and sellers in the marketplace upon which all business transactions ultimately depend.
We conclude that defendants have shown sufficient evidence that the loan was secured on the basis of information elicited from Dunn and entered upon a form which she signed and acted upon in paying installments, as fixed by the loan application, for many months. This sufficed to shift the burden to plaintiff to respond. Her burden might have been satisfied by the production [*4]of her tax returns or employer's W-2 form for the period in question, or receipts for her rental expenses and, perhaps, her divorce decree showing no entitlement to child support. No such evidence was produced. Her conclusory statements and denials, standing alone, do not meet her burden to submit evidentiary proof, in admissible form, that a question of fact exists regarding the falsity of defendants' representations.
Section 349 was not intended to forgive an unreasonable failure by Dunn to verify important financial representations submitted on her behalf to a lender or an unreasonable and inexplicable failure by her to refuse the payment of obligations which she claims were never agreed upon.
Defendants shall submit separate orders, on notice, dismissing the Dunn complaint in its entirety, and the Ellsworth claims except the General Business Law cause of action.
 Walter J. Relihan, Jr.
Justice, Supreme Court
cc:Michael P. Husar, Chief Clerk
Decision Date: January 07, 2004