OPINION OF THE COURT
James C. Harberson, Jr., J.
*454 Facts
The plaintiff asked the defendant Ford dealer to examine his Ford truck to determine what its transmission problems were and to advise him what corrections would be recommended. When he spoke to Anthony Dick on June 29, 2006, he was on the telephone so it was agreed that the truck would be towed to the defendant’s garage and for $225 the transmission would be disassembled so the problems could be identified and a recommended course of action be given to the plaintiff.
Mr. Dick prepared a “service order” on a form used at the garage (exhibit 1) on which he had printed information about the vehicle and then wrote a handwritten note “OK 3 hrs tear down $225.” He explained that the “service order” would have been signed by any customer before the work was done, but because the plaintiff was not there and was having the car towed in, the work would be done without the signature that would be secured from the customer the first time he came into the dealership.
On July 5, 2006, the plaintiff came to the service area of the defendant and was told that to fix the transmission he had the choice of having it rebuilt there or having a Ford factory re-manufactured transmission installed at the cost of $2,845.95 or $2,761.33, respectively.
The plaintiff said that he was shown the parts and labor costs for each choice outlined in a “Service Estimate Sheet” (exhibit 2). He said that Mr. Dick explained to him the “snap ring broke and welded the clutch together” — which Mr. Dick testified he wrote on the “estimate sheet” — and that was the cause of his transmission breakdown.
He said that it was not until July 19, 2006 that the plaintiff was able to secure a loan to pay the total bill of $2,903.68 for all the service work done after June 29, 2006 (see exhibit 6). The plaintiff said that he had to borrow $3,157.72 to pay for these repairs for which he now seeks reimbursement and that after he got the vehicle back it has run without problems.
Damages
In this case the plaintiff obtained a loan for $3,157.72 to pay the defendant’s bill of $2,903.68 for work the court has found was not authorized by the plaintiff.
The question is whether the total costs for labor and parts outlined on exhibit 6 should be awarded to the plaintiff as restitution as well as the cost of the loan. *455 The court finds that the labor costs should be reviewed under General Business Law § 349 (a).
In Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc. (3 NY3d 200, 205 [2004]), the Court stated: “General Business Law § 349 is a consumer protection statute designed to protect against ‘[deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state’ (General Business Law Section 349 [a]).”
The Court then explained that
“[a]s we have previously noted, the scope of the statute ‘is intentionally broad, applying “to virtually all economic activity” ’ (Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 324 [2002], quoting Karlin v IVF Am., 93 NY2d 282, 290 [1999]). In order to make out a valid section 349 claim, a plaintiff must allege both a deceptive act or practice directed toward consumers and that such act or practice resulted in actual injury to a plaintiff (see Small v Lorillard Tobacco Co., 94 NY2d 43, 55-56 [1999]; Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 25-26 [1995]).” (Id. at 205-206.)
In Oswego Laborers’ Local 214 Pension Fund, the Court observed that the “Governor’s Memorandum approving the bill . . . lauds its consumer-protective purpose: ‘Consumers have the right to an honest market place where trust prevails between buyer and seller’ ” (id. at 25 [citation omitted]).
The Court then explained that
‘ ‘ [c] onsumer-oriented conduct does not require a repetition or pattern of deceptive behavior . . . [p]laintiff . . . need not show that the defendant committed the complained-of acts repeated — either to the same plaintiff or to other consumers— but instead must demonstrate that the acts or practices have a broader impact on consumers at large” (id.).
The Court concluded that in addition to showing “[p]roof that defendant’s acts are directed at consumers ... [a] prima facie case requires ... a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof’ (id. at 25-26 [citations omitted]).
*456 The plaintiff submitted exhibit 3, a photocopy of defendant’s time sheets covering work on his vehicle done on July 5, 2006 and July 6, 2006, along with exhibit 6, an invoice showing the cost for labor and parts to install the remanufactured transmission.
He pointed out that according to the July 6, 2006 time sheet the labor amounted to 13.3 hours while the actual time recorded on it was from 15.8 to 18.7 hours (military time) or about three hours actually spent to do the job. He was billed at $70 per hour for a total of $931 ($70 x 13.3 hours) for a three-hour job. He said this was never pointed out to him by the defendant’s employees at the time he was given the job quotes on July 5, 2006.
Mr. Pete Smith, parts supervisor, stated about the 13.3 hours, “that’s flat labor time. Flat rate labor time. It doesn’t matter if it took them 10 minutes to put it in.” He said it was a “nationwide” fixed labor cost that results in the customer being charged 10 hours more for labor than was actually involved to install the transmission because “that’s a flat rate shop.”
Mr. Anthony Dick, service advisor, testified that “the flat rate is ... a national time ... set up to what its going to be . . . not just the three [hours].” The court commented it only took “three hours to put in the new transmission, according to your time sheet ... he got charged the 13.3?” Mr. Dick responded “yes sir, yup.”
Mr. Fred Knight, service manager, in explaining the invoice (exhibit 6) acknowledged the plaintiff was charged a flat rate of 13.3 hours to install the transmission when according to the time card it only took “three hours” — “the invoice shows total labor of $931” based on a flat rate of 13.3 hours at $70 per hour. Fuccillo Auto Mall’s employees admitted on the record that the labor time of 13.3 hours on the July 6, 2006 time sheet (exhibit 3) to do the transmission work was not based on the actual time it took to fix the plaintiffs transmission, but rather, it was based on a fixed time allotment for all transmission work of this kind based upon a national standard adopted by the Fuccillo dealerships.
In other words, the customer is not advised that while the job will only take three hours he or she will be charged for 13.3 hours because that is a national standard Fuccillo has adopted to base its labor charge on such a job.
*457 It is clear that Fuceillo Auto Mall, a nationally recognized dealership, engages in “consumer-oriented” transactions involving, among other things, selling cars, and furnishing automotive services, including car repairs to consumers. The court finds that the defendant’s policy of fixing its time to do a given job on a customer’s vehicle based on a national time standard, rather than being based upon the actual time it took to do the task without so advising each customer of their method of assessing labor costs, is “a deceptive act or practice directed toward consumers and that such act or practice resulted in actual injury to a plaintiff” (Blue Cross, supra at 206), the plaintiff in this case.
The court finds the plaintiff has “sufficiently alleged consumer-oriented misconduct on the defendant’s part ... alleging a violation of General Business Law § 349” (Scalp & Blade v Advest, Inc., 281 AD2d 882, 883 [4th Dept 2001] [citations omitted]).
The facts show that the labor charged to the plaintiff in this case was based upon 13.3 hours (exhibit 3) — the national standard for such a job adopted by the defendant — when according to the testimony of Mr. Dick, the actual labor time to do the job was three hours resulting in the plaintiff being billed for 10.3 hours more than the job took to do at $70 per hour. This resulted in the plaintiff being charged $721 more for a job that only took three hours ($210).
The invoice for the work shows labor costs of $931. The court will subtract $210 from that figure leaving an overcharge of $721. A sales tax of 7.75% was assessed to the $721 equaling $55.88 that was collected from the plaintiff. This means that due to the defendant’s conduct in violation of General Business Law § 349 the plaintiff overpaid the defendant $776.88 ($721 + $55.88) and that sum should be subtracted from the bill of $2,903.68, leaving $2,126.80.
The court also finds that under General Business Law § 349 (h) the court “in its discretion” will “increase the award of damages” from $776.88 to “three times the actual damages up to [$1,000]” as the court finds the defendant “willfully and knowingly violated this section.”
The plaintiff, then, is awarded $254.04 for the cost of the loan, $776.88 for the labor overcharge plus sales tax and $1,000 under General Business Law § 349 (h) for “willfully and knowingly violating]” that statute, resulting in the $776.88 over *458 charge for doing three hours of work and charging the plaintiff for 13.3 hours for a total of $2,030.92 due to the plaintiff.
The plaintiff is awarded $2,030.92, together with costs of $20.