Andrea **SORRENTINO,** D'Angelo and Patricia Jackson, Louis Apa, Steven Andelman, Peedo and Saifon Pituk, Manny Delmas and Barbara Lindon, Chandeep Sodhi, Jaspreet Sodhi, Jaclyn Tesoriero, Kimberly Cilone, Marie Varallo, and Hsiangchi Hsu, individually and on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

ASN ROOSEVELT CENTER, LLC d/b/a Archstone Westbury, Archstone Smith Communities LLC, Archstone Smith Operating Trust, John Doe Corporation I Through X, Defendants.

No. 08CV0550 (ADS)(ETB).

United States District Court,
E.D. New York.

Sept. 29, 2008.

Lowey Dannenberg Cohen & Hart, P.C., by Richard Wolfe Cohen, Esq., Jeanne F. D'Esposito, Esq., Scott Vincent Papp, Esq., of Counsel, Malverne, NY, for Plaintiffs.

Westerman Ball Ederer Miller & Sharfstein, LLP, by William Edward Vita, Esq., Jennifer L. Noe, Esq., of Counsel, Mineola, NY, Shook Hardy & Bacon, LLP, Washington, DC, by Peter Strand, Esq., David Thorne, Esq., Rebecca Schwartz, Esq., of Counsel, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

### I. BACKGROUND

The following facts are derived from the pleadings and the parties submissions on the motion.

The plaintiffs in this putative class action are former tenants of a luxury apartment complex located at 1299 Corporate Drive, Westbury, NY. 11590 (the "Westbury Complex"). On or about November 27, 2007, the tenants were notified by their landlord, ASN Roosevelt Center, LLC d/b/a Archstone Westbury ("Archstone Westbury"), that they would have to vacate their apartments due to water intrusion issues at the Westbury Complex. The tenants were instructed that their leases would be terminated and they had to vacate the premises by March 31, 2008. The letter explained that mold had been found in spaces between the exterior and interior of the wall surfaces and that due to the extensive nature and scope of the work required to be done, the buildings would need to be vacant during reconstruction. The tenants dispute whether the leases were appropriately terminated.

On November 28, 2007, Andrea Sorrentino filed the instant putative class action in New York State Supreme Court, Nas-

sau County on behalf of herself and all present and former Archstone Complex tenants, naming only Archstone Westbury as a defendant. Two additional class action cases were filed by residents of the Westbury Complex in state court in December 2007, *Marchese v. ASN Roosevelt Center, LLC,* Index No. 07/021745, and *Francois v. ASN Roosevelt Center, LLC,* Index No. 07/021967.

Following a motion to dismiss by the defendants, Sorrentino amended her class action complaint on January 7, 2008, adding fourteen plaintiffs and two Archstone Westbury affiliates as defendants—Archstone Smith Communities LLC and Archstone Smith Operating Trust. In addition, the plaintiff added claims for medical monitoring and violation of N.Y. Gen. Bus. Law § 349.

On February 6, 2008, in state court, the Honorable Leonard B. Austin granted the plaintiffs' unopposed motion to consolidate this action with the *Marchese* and *Francois* actions. However, the final order was not entered by the Nassau County Clerk until February 14, 2008 and in the interim, the two newly-named defendants filed a notice of removal to this Court.

On February 15, 2008, the defendants filed a motion to dismiss plaintiffs' Count IV for medical monitoring, and Count V for violation of N.Y. Gen. Bus. Law § 349.

## II. DISCUSSION

In deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.,* 412 F.3d 103, 109 (2d Cir.2005); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 202 (2d Cir.1999). A complaint should be dismissed only if it does not contain enough allegations of fact to state a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1973–1974, 167 L.Ed.2d 929 (2007). In this regard, "[t]he plaintiff's factual allegations must be enough to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.,* 507 F.3d 117, 121 (2d Cir.2007). According to the Second Circuit, "[i]n last term's *Twombly* decision ... the Supreme Court held that a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Id.*

### A. As to the Plaintiffs' Claim for Medical Monitoring

■ The defendants move to dismiss Count Four of the plaintiffs' Amended Complaint, asserting a cause of action for medical monitoring on the basis that the New York Court of Appeals has never recognized an independent cause of action for medical monitoring and such a claim may only be asserted in the form of a remedy. Further, the defendants contend that even if a cause of action for medical monitoring could be maintained, the plaintiffs have failed to allege an actionable toxic exposure.

Count Four of the Amended Complaint alleges that by virtue of their actions, the Defendants have caused the plaintiffs and all potential class members reasonable apprehension of a serious illness attributable to living in apartments which are infested with mold and/or elevated levels of bacteria. Further, the plaintiffs contend that as a direct and proximate result of the negligence of the defendants, the plaintiffs and all members of the class will need ongoing diagnostic, curative and preventative medi-

cal care because of their potential exposure to toxic mold.

Although the New York Court of Appeals has never expressly recognized an independent cause of action for medical monitoring, the Court disagrees with the defendants contention that the courts of the Appellate Division have not done so. In *Allen v. General Elec. Co.*, 32 A.D.3d 1163, 821 N.Y.S.2d 692 (4th Dep't 2006), the court reinstated the plaintiffs' "claims" for medical monitoring after summary dismissal where the defendants failed to submit evidence that the plaintiffs "were not exposed to the disease-causing agent or that there is no rational basis for their fear of contracting the disease." *Id.* at 1165; 821 N.Y.S.2d at 695; *see also Dangler v. Town of Whitestown*, 241 A.D.2d 290, 672 N.Y.S.2d 188 (4th Dep't 1998) (finding that the plaintiffs stated a "cause of action" for cancerphobia); *Abusio v. Consolidated Edison Co. of N.Y.*, 238 A.D.2d 454, 454–455, 656 N.Y.S.2d 371 (2d Dep't 1997) (recognizing a cause of action for fear of cancer and related medical monitoring).

Moreover, the federal courts in this district have found that "in cases involving exposure to toxic materials, the New York Court of Appeals would recognize an independent cause of action for medical monitoring." *Abbatiello v. Monsanto Co.*, 522 F.Supp.2d 524, 538 (S.D.N.Y.2007) (collecting cases arriving at the same conclusion).

█ Further, the defendants' contention that the plaintiffs have failed to allege an actionable exposure is incorrect. "In order to recover medical monitoring costs following exposure to a toxic substance, a plaintiff must establish both that he or she was in fact exposed to the disease-causing agent and that there is a 'rational basis' for his or her fear of contracting the disease. This 'rational basis' has been construed to mean the clinically demonstrable presence of the toxic substance in the plaintiff's

body, or some indication of toxin-induced disease, i.e., some physical manifestation of toxic contamination." *Allen v. General Elec. Co.*, 32 A.D.3d 1163, 1165, 821 N.Y.S.2d 692 (4th Dep't 2006) (internal citations and quotations omitted).

The defendants do not dispute that exposure to mold can result in serious health effects. Further, the Amended Complaint contains sufficient allegations that the mold caused by water-infiltration was detected in and around the occupied spaces in the Westbury Complex. (Amend. Compl. at ¶¶ 1, 30, 43). Finally, the plaintiffs have alleged that at least some of those exposed to the conditions at the Westbury Complex have developed exposure-related health conditions. (Amend. Compl. at ¶¶ 2, 41). Accordingly, the Court finds that the plaintiffs have stated a rational basis for exposure to a disease-causing agent and there is a rational basis for their fear of contracting the disease. Therefore, the defendants' motion to dismiss Count IV of the Amended Complaint based on medical monitoring, is denied.

## B. As to the Plaintiffs' Claim for Violation of the New York General Business Law § 349

█ The defendants move for dismissal of Count Five of the Amended Complaint, asserting a violation of the New York General Business Law § 349 on the basis that to sustain a claim under that section, the plaintiffs must allege consumer-oriented practices, having a broad impact on consumers at large. The defendants state that here, their activities were not targeted towards the consuming public at large, and any impact was felt only by the tenants of the Westbury Complex. In addition, the defendants contend that although the plaintiffs have alleged that they marketed and advertised the rental units at the Westbury Complex, they have failed to

allege the manner in which such advertising was misleading.

 New York State General Business Law, ("GBL"), § 349 makes illegal "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state ..." To successively state a claim pursuant to GBL § 349, a plaintiff must plead and prove: (1) a consumer oriented transaction; (2) deceptive acts by the defendant; and (3) injury caused by such deceptive acts. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 647 N.E.2d 741, 623 N.Y.S.2d 529, 532 (1995). In *Oswego,* the New York Court of Appeals defined "consumer-oriented" conduct as that which "potentially affects similarly situated consumers." *Id.* at 533. As to the second factor, the Court looked to "whether [the] representations or omissions [were] likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.*

Importantly, New York courts and federal courts within this Circuit have applied GBL § 349 in the landlord-tenant context, where tenants allege harm caused by the deceptive acts of their landlords, without regard to a broad impact on consumers at large. *See, e.g., Buyers and Renters United to Save Harlem v. Pinnacle Group N.Y. LLC,* No. 07CV6316, 575 F.Supp.2d 499, 511–12, 2008 WL 4177943, at *12 (S.D.N.Y. Sept. 5, 2008); *Lozano v. Grunberg,* 195 A.D.2d 308, 600 N.Y.S.2d 43 (1st Dep't 1993).

Here, the plaintiffs contend that the defendants continued to market and advertise their apartments, and continued to enter into new lease agreements and renew existing lease agreements even after discovering the water infiltration and mold-growth problems in the Complex without disclosing these problems to potential renters. (Amend. Compl. at ¶¶ 35–37, 65–68). Further, the plaintiff allege that they have suffered both financial and physical injury as a result of the defendants' deceptive acts. (Amend. Compl. at ¶¶ 41, 47, 68–69). Accordingly, the Court finds the plaintiffs have plead the elements necessary to state a claim under GBL § 349.

## III. CONCLUSION

For the foregoing reasons it is hereby:

**ORDERED,** that the defendants' motion to dismiss the Fourth and Fifth Counts of the Amended Complaint is denied in its entirety.

**SO ORDERED.**