10-3244-cv
Gotlin et al. v. Lederman et al.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 1ˢᵗ day of May, two thousand twelve.

Present:
> ROBERT A. KATZMANN,
> DENNY CHIN,
> SUSAN L. CARNEY,
> > *Circuit Judges.*

_____

GARY D. GOTLIN, as Public Administrator of the State of
New York, in and for the County of Richmond, in his capacity
as Administrator for the Estates of the following decedents:
GIUSEPPA CARAMANNA BONO, deceased, and her surviving
spouse, GIUSEPPE BONO, DINO CATTAI, deceased, and his
surviving spouse,

> *Plaintiffs-Appellants,*                              No.  10-3244-cv

DINO BROVELLI, deceased, and his surviving spouse,
PATRIZIA SIRAGUSA BROVELLI, VIRGINIA GRANDIN
CATTAI, FRANCESCO CENTORE, deceased, and his surviving
spouse, MARIA MENSITIERI CENTORE, GIUSEPPE DiGANCI,
deceased, and his surviving spouse, MARIA RITA PULEO
DiGANCI, ROBERTO ETTORE, deceased, and his surviving
spouse, CARMELA FRAMMARTINO ETTORE, MASSIMO
FACCHINI, deceased, and his surviving spouse, FEDERICA
LOSACCO FACCHINI, GIANCARLA PESCI PESCI,
ANTONIO RODA,

> *Plaintiffs,*

v.

GILBERT S. LEDERMAN, M.D., GILBERT LEDERMAN, MD, P.C., PHILIP JAY SILVERMAN, M.D., JOSEPH CONTE, SALVATORE CONTE, M.D., MARIA GELMI-NOURBAHA, STATEN ISLAND UNIVERSITY HOSPITAL, NORTH SHORE-LONG ISLAND JEWISH HEALTHCARE INC., NORTH SHORE LONG ISLAND JEWISH HEALTH SYSTEM, ANDREW J. PASSERI, ALFRED L. GLOVER, RALPH J. LAMBERTI, GERALD FERLISI, ANTHONY C. FERRERI, BETSEY MERCEREAU, RICK J. VARONE, JOSEPH R. PISANI, DALE TAIT, JOHN L. COSTELLO, JOHN A. D'ANNA, JOHN M. SHALL, IRINA GROSMAN, M.D.,

*Defendants-Appellees*,

ANNAMARIA PERSICO,

*Defendant.*

_____

| | |
|---|---|
| For Plaintiff-Appellant: | JONATHAN BEHRINS, Behrins & Behrins, P.C., Staten Island, N.Y. |
| For Defendants-Appellees Gilbert S. Lederman, M.D. and Gilbert Lederman, M.D., P.C.: | MARTIN B. ADAMS, Kopff, Nardelli & Dopf LLP, New York, N.Y. |
| For Defendants-Appellees Philip Jay Silverman, M.D. and Irina Grosman, M.D.: | ANTHONY A. LENZA, JR., Amabile & Erman, P.C., Staten Island, N.Y. |
| For Defendants-Appellees Joseph Conte, Salvatore Conte, M.D., Maria Gelmi-Nourbaha, Staten Island University Hospital, North Shore-Long Island Jewish Healthcare Inc., North Shore Long Island Jewish Health System, Andrew J. Passeri, Alfred L. Glover, Ralph J. Lamberti, Gerald Ferlisi, Anthony C. Ferreri, Betsey Mercereau, Rick J. Varone, Joseph R. Pisani, Dale Tait, John L. Costello, John A. D'Anna, and John M. Shall: | BARBARA D. GOLDBERG (Arjay G. Yao, Anthony M. Sola, Nancy J. Block, *on the brief*), Martin Clearwater & Bell LLP, New York, N.Y. |

Appeal from the United States District Court for the Eastern District of New York (Glasser, *J.*).

2

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED** in part and **VACATED** and **REMANDED** in part.

Plaintiff-appellant Gary D. Gotlin, in his capacity as administrator of the estate of decedent plaintiff-appellant Giuseppa Caramanna Bono and her surviving spouse, plaintiff-appellant Giuseppe Bono (collectively, "plaintiffs"), appeals a judgment entered May 21, 2010 by the United States District Court for the Eastern District of New York (Glasser, *J.*), following orders dated May 3, 2010, May 21, 2009, and May 3, 2005, a jury verdict entered May 13, 2010, as well as post-judgment orders dated July 29, 2010 and November 15, 2010. In this action, Gotlin asserts, *inter alia*, that defendants fraudulently misrepresented the efficacy of a particular form of cancer treatment, Fractionated Stereotactic Radiosurgery ("FSR"), and therefore unlawfully induced the decedents to unnecessarily undergo an ineffective and harmful form of radiation therapy. We presume the parties' familiarity with the underlying facts and procedural history of this case, as well as the issues on appeal.

We review *de novo* a district court's dismissal of a claim pursuant to Fed. R. Civ. P. 12(b)(6). *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 103 (2d Cir. 2009). In order to state a claim under Rule 12(b)(6), "a complaint must contain . . . sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We also review *de novo* a district court's grant of summary judgment. *See Pilgrim v. Luther*, 571 F.3d 201, 204 (2d Cir. 2009). In reviewing a summary judgment decision, this Court "utilizes the same standard as the district court: summary judgment is appropriate where there exists no

genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). A material fact is one that might "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities and draw all inferences against the moving party. *See, e.g.*, *Pilgrim*, 571 F.3d at 204. A district court's grant of a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 is also reviewed *de novo*. *Brady v. Wal–Mart Stores, Inc.,* 531 F.3d 127, 133 (2d Cir. 2008). A grant of judgment as a matter of law following a jury verdict "may only be granted if . . . the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Id.* (internal quotation marks omitted). Finally, we "review a district court's evidentiary rulings for abuse of discretion, and will reverse only if an erroneous ruling affected a party's substantial rights." *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005).

Turning to the issues on appeal, we first conclude that the district court did not err in dismissing on the pleadings plaintiffs' common law fraud claim. Under New York law, a plaintiff may not assert separate causes of action for fraud and medical malpractice unless "the damages sustained as a result of the fraud are distinct from the damages sustained as a result of the malpractice." *Giannetto v. Knee*, 82 A.D.3d 1043, 1045 (N.Y. App. Div. 2011). Plaintiffs, however, do not allege a distinct injury flowing from defendants' alleged fraud, as opposed to defendants' alleged malpractice, and so the district court correctly concluded that plaintiffs could not sustain an independent claim for fraud. *See Spinosa v. Weinstein*, 168 A.D.2d 32, 42 (N.Y.

4

App. Div. 1991) (dismissing fraud claim where "the injuries suffered by [the plaintiff] under either [her fraud or medical malpractice theories] flow from her claim that she was induced to undergo unnecessary surgery" and are therefore "not separate and distinct" from one another).

Second, the district court did not err in dismissing on the pleadings plaintiffs' claim brought pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO").  A "plaintiff only has standing [to bring a civil action under RICO] if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  The words "'business or property' . . . refer to commercial interests or enterprises." *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 264 (1972).  Accordingly, "injuries [that] are personal in nature" do not constitute injury to "business or property" as those terms are used in RICO.  *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 241 (2d Cir. 1999).  Plaintiffs allege RICO damages equivalent to the amount they paid defendants for FSR treatment.  As the district court correctly held, however, plaintiffs' monetary losses were incidental to their personal injuries, and so cannot constitute injuries to "property" as required to state a RICO claim.  *See id.*

Third, the district court correctly dismissed on summary judgment plaintiffs' claims for failure to obtain a patient's informed consent, in violation of N.Y. Pub. Health L. § 2805, and for common law hospital negligence.  Plaintiffs adduced no evidence indicating that language barriers inhibited Mrs. Bono's informed consent, and cite no authority for the proposition that an alleged negligent misdiagnosis alone can sustain a claim for failure to obtain a patient's informed consent to a treatment that proceeds on the basis of that misdiagnosis.  As  for the hospital

5

negligence claim, plaintiffs proferred no evidence in support of this claim on summary judgment below, nor do they make any arguments relating to the district court's dismissal of this claim on appeal. *See Norton v. Sam's Club*, 145 F. 3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").[1]

Fourth, we conclude, for substantially the same reasons that the district court articulated in its well-reasoned post-trial Memorandum and Order dated July 28, 2010, that the district court correctly granted defendants' Rule 50 motion for judgment as a matter of law on the issue of pain and suffering damages, as plaintiffs did not adduce any evidence at trial by which a reasonably jury could have found that their pain and suffering was caused by the medical malpractice of defendants-appellants Dr. Lederman and Dr. Silverman. Notably, no witness at trial offered any non-speculative testimony as to a causal relationship between Mrs. Bono's pain and suffering and her receipt of FSR treatment. Accordingly, while the district court's verdict sheet was materially defective in that it did not direct the jury to issue a finding as to whether Dr. Lederman and Dr. Silverman's malpractice proximately caused Mrs. Bono pain and suffering, the plaintiffs' failure to adduce any evidence whatsoever in support of such a finding renders this error harmless.

Fifth, the district court did not abuse its discretion in any of its pre-trial evidentiary rulings. We well appreciate that the district court faced significant challenges in managing this case because of plaintiffs' counsel's utter inability or unwillingness to meet his professional duties. In particular, plaintiffs' counsel's egregious and flagrant flouting of his discovery

---

[1] In addition, insofar as the appellants purport to appeal the district court's dismissal of claims on behalf of other plaintiffs not listed as appellants in the July 30, 2010 notice of appeal, we do not have jurisdiction to consider the district court's dismissal of those claims. *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 315 (1988).

obligations  clearly warranted the district court's imposition of discovery (and other) sanctions. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642-43 (1976); *see also 535 Broadwav Assocs. v. Commercial Credit Corp. of Am.*, 159 B.R. 403, 410 (S.D.N.Y. 1993) (Sotomayor, *J.*) (Counsel's "systematic and unilateral disregard for [its discovery obligations] and its contempt of this Court's orders has gravely prejudiced [the other party's] ability appropriately to litigate this case" and "is contrary to our system's basic notions of justice."). At oral argument on appeal, plaintiffs' counsel himself conceded that the case was "difficult [for him] to manage for a good bit of time" because of the great number of individuals he was representing and because of his difficulty communicating with his clients. Transcript of Oral Argument at 4, *Gotlin v. Lederman*, 10-3244-cv (argued February 9, 2012). Accordingly, the court did not abuse its discretion in effectuating its prior orders by barring plaintiffs' expert from referencing at trial evidence that the court had, as a discovery sanction, precluded plaintiffs from directly entering into evidence.

Finally, we turn to the district court's dismissal on summary judgment of the plaintiffs' claim for deceptive marketing and false advertising in violation of New York General Business Law §§ 349 & 350. "Section 349(a) of the General Business Law declares as unlawful '[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . .'" *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 24 (1995) (quoting N.Y. Gen. Bus. L. § 349). Deceptive acts or practices are "those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* at 26. Section 350 of the General Business Law "declare[s] unlawful" all "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [the] state." N.Y. Gen. Bus. L. § 350. These provisions apply "to virtually all

7

economic activity" that occurs in New York State,[2] including the provision of medical services, in an effort to secure "an honest market place where trust, and not deception, prevails." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 323-24 (2002) (internal citations and quotation marks omitted).

Plaintiffs contend that the defendants -- in their brochures, videos, advertisements, seminars, and internet sites -- deceptively marketed and advertised FSR treatment by making unrealistic claims as to its success rates. Specifically, plaintiffs contend that defendants' claims that FSR treatment had "success rates" of greater than 90% in treating pancreatic cancer were materially deceptive. In this respect, the district court correctly concluded that defendants' marketing brochures are only evidence of "*what* representations the defendants made" and not "*whether* those representations were fraudulent or misleading," *Gotlin v. Lederman*, 616 F. Supp. 2d 376, 392 (E.D.N.Y. 2009) (emphases in original). Accordingly, the court concluded that it was unable to assess the relative truthfulness of the scientific and medical claims appearing in defendants' brochures without at least some evidence, expert or otherwise, indicating that those claims were false or otherwise misleading. However, the district court did

---

[2] The district court dismissed plaintiffs' N.Y. Gen. Bus. L. §§ 349-50 claim on the alternative ground that defendants' allegedly deceptive advertising did not occur in New York State. This was error. The New York Court of Appeals held in *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314 (2002), that N.Y. Gen. Bus. L. § 349 does not apply to "out-of-state transactions of New York companies," meaning that the "deception of a consumer must occur in New York" as opposed to "the mere invention of a [deceptive] scheme or marketing strategy." *Id.* at 325; *see also id.* ("[T]he intent [of N.Y. Gen. Bus. L. § 349] is to protect consumers in their transactions that take place in New York State. It was not intended to . . . function as a per se bar to out-of-state plaintiffs' claims of deceptive acts leading to transactions within the state."). Here, defendants' initial alleged deceptive acts occurred in Italy, but the deceptively procured services -- *i.e.*, the "transaction" -- occurred in New York. Moreover, the district court erred in viewing the time horizon of defendants' alleged deceptive scheme as limited to the moment at which plaintiffs were first deceived. Defendants' alleged deceptive scheme was ongoing, and continued throughout Mrs. Bono's receipt of FSR treatment in New York.

not address the fact that Drs. Louis B. Harrison and Paul R. Gliedman, plaintiffs' medical experts, did offer their opinion as to the misleading nature of at least one of defendants' representations. Specifically, in their expert report, Drs. Harrison and Gliedman, in discussing the case of another plaintiff, Piera Mattaini -- who, like Mrs. Bono, was diagnosed with "unresectable pancreatic carcinoma" -- state that:

> In our opinion, the use of [FSR] therapy, in the manner used in this patient, was not the recognized standard of care for unresectable nonmetastatic pancreatic cancer in 2002. . . . We . . . note a letter in the chart . . . claiming that "local success rate" was 94%. This data quotation seems misleading, given the universally poor outcomes for this disease.

J.A. 1330. This claim as to FSR therapy's 94% success rate in treating pancreatic cancer is materially identical to claims made in defendants' marketing brochures. Those brochures state, in relevant part, that:

> Primary pancreas cancers have been treated with a very high rate of success [with FSR therapy]. In fact, 94 percent of primary pancreas cancers currently have been successfully controlled in the treated area with [FSR therapy] at Staten Island University Hospital. Many included patients who had extensive prior unsuccessful treatment. . . .
>
> Furthermore, the size of the cancers treated with [FRS therapy] here was, on average, three times the size [as cancers treated in studies of comparable treatments] and still we had a dramatically higher success rate [than those other treatments].

J.A. 1249. Moreover, while the brochures at one point define "success" in a relatively circumscribed manner, including cases in which the cancer stopped growing or shrunk but did not disappear altogether, J.A. 1244, at other points the brochures suggest that FSR treatment will yield much broader successes than merely arresting the growth of cancer. *See* J.A. 1241-45 (describing "possibilities never dreamt before," "superb results," "great effectiveness,"and "superior outcomes").

9

In addition, Drs. Harrison and Gliedman's expert report states several times that FSR therapy was unnecessary, either because it had no "curative potential" with regard to a particular patient's circumstances or because the patient in question "presented with incurable disease" generally. *See* J.A. 1325-1331 (discussing patients Deodato, Roda, Giovannini, Centore, Caberti, Cataranelli, Spirito, Mattaini, Pesci, and Scurto).[3] Accordingly, in the opinion of Drs. Harrison and Gliedman, those patients had been "subjected to widespread radiation therapy without any chance of benefit." J.A. 1328 (discussing patient Caberti). By making such statements, Drs. Harrison and Gliedman impliedly impugn the accuracy of defendants' brochure's representations that FSR therapy had achieved "superb results" in instances in which "normal radiation has not been successful," J.A. 1243. Importantly, Drs. Harrison and Gliedman did not merely represent that FSR treatment had not proven effective for the particular patients in question, but that defendants marketed FSR treatment as having "a very high rate of success," J.A. 1249, for "so-called 'hopeless cases,'" J.A. 1247, to patients who, in fact, had incurable cancer. *See* J.A. 1325-1331.

Based on the foregoing, we conclude that the summary judgment record presents genuine issues of material fact as to (a) whether defendants' marketing of FSR treatment's "success rates" was materially deceptive to a reasonable consumer in violation of N.Y. Gen. Bus. L. § 349-50, and (b) whether plaintiffs suffered any legally cognizable injuries as a result of defendants' allegedly misleading marketing of FSR treatment.

---

[3] There are many distinctions, medical and otherwise, between the cases of Mrs. Bono, the only remaining decedent plaintiff on appeal, and the other original plaintiffs in this action. Nevertheless, because Drs. Harrison and Gliedman produced a single expert report discussing the cases of all the original deceased plaintiffs, that report is properly considered, in its entirety, on the instant appeal.

We have considered all of plaintiffs' other arguments on appeal and find them to be without merit.  Accordingly, the judgment of the district court is hereby **AFFIRMED** in part and **VACATED** and **REMANDED** in part.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK